In re Karen BALGEMANN, a/k/a Karen Bradshaw, Debtor.

Karen BRADSHAW, Plaintiff,

v.

BENEFICIAL FINANCE CO. OF ILLINOIS, INC., Defendant.

Adv. No. 81 A 1250.

United States Bankruptcy Court, N. D. Illinois, E. D.

Jan. 22, 1982.

Janeen J. Aggen, Salt Lake City, Utah, for plaintiff.

Henry F. Field, Chicago, Ill., for defendant.

### Memorandum and order

THOMAS JAMES, Bankruptcy Judge.

Karen Bradshaw, debtor-plaintiff, has sued to void the lien of Beneficial Finance Company of Illinois, Inc., defendant-counterplaintiff, on certain household furnishings, appliances and other "consumer goods" and to have the court declare Illinois Public Act 81–1505 (Ill.Rev.Stat. ch. 52, § 101), prohibiting the use of § 522(d) of the Bankruptcy Code, unconstitutional. Beneficial Finance has filed a counterclaim for judgment and to lift the stay. Mrs. Bradshaw has moved for a judgment on the pleadings. The court will grant her motion and judgment will be rendered for Karen Bradshaw on both the complaint and counterclaim.

Beneficial loaned Mrs. Bradshaw a sum of money on September 5, 1979. On that date she gave Beneficial a security interest in household goods listed in a certain identification of security. The parties have stipulated the value of the collateral to be

$1,100. The court finds that Mrs. Bradshaw is entitled to the federal exemptions under § 522; that Beneficial holds a nonpossessory, nonpurchase money security interest in household goods under § 522(f)(2)(A) exempt under either § 522(d)(3), as household furnishings which do not exceed $200 each in value, or under § 522(d)(5), as part of the unused portion of Mrs. Bradshaw's $7,500 homestead exemption; and that Beneficial's lien impairs Mrs. Bradshaw's exemptions.

Section 522(b)(1) permits the States to opt out of the exemptions provided in § 522(d) of the Code. Illinois enacted Public Act 81–1505 to prohibit Illinois residents from using the federal exemptions provided in § 522(d) of the Code. Section 522(b)(2)(A) gives the States leeway to fashion their own exemptions to the particular needs of their residents whether the State has opted out or not. These provisions were part of the compromise between the House and Senate on the issue of exemptions. The House had contemplated setting a "federal floor" which allowed debtors to choose either the State or the federal exemptions, depending on which was most advantageous to them. The Senate had left determination of exemptions to the States.

■  The principal reason for revising exemptions in 1978 was a recognition by Congress of an overriding federal interest in providing debtors who go through bankruptcy with sufficient property after bankruptcy to have a fresh start:

> However, some State exemption laws have not been revised in this century. Most are outmoded, designed for more rural times and hopelessly inadequate to serve the needs of and provide a fresh start for modern urban debtors. The historical purpose of these exemption laws has been to protect a debtor from his creditors, to provide him with the basic necessities of life so that even if his creditors levy on all of his nonexempt property, the debtor will not be left destitute and a public charge. The purpose has not changed, but neither have the level of exemptions in many States. Thus, the purpose has largely been defeated.

> Though exemption laws have been considered within the province of State law under the current Bankruptcy Act, H.R. 8200 adopts the position that there is a Federal interest in seeing that a debtor that goes through bankruptcy comes out with adequate possessions to begin his fresh start. Recognizing, however, the circumstances do vary in different parts of the country, the bill permits the States to set exemption levels appropriate to the locale, and allows debtors to choose between the State exemptions and the Federal exemptions provided in the bill. Thus, the bill continues to recognize the States' interest in regulating credit within the States, but enunciates a bankruptcy policy favoring a fresh start.

H.R.Rep.No.95–595, 95th Cong., 1st Sess. 126 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6087.

The opt out provision in § 522(b)(1) does not change this policy. Congress's adoption of the compromise, however, does recognize that the "federal floor" suggested by the House may be too generous to debtors in certain parts of the country. But States which wish to elect to opt out of the federal exemptions must still provide debtors adequate property for them to begin their fresh starts.

■  Congress may, as here, delegate its legislative authority, but in so doing it must provide guidelines to insure that Congress's objectives are met. *Schechter Poultry Corp. v. United States*, 295 U.S. 495, 55 S.Ct. 837, 79 L.Ed. 1570 (1935), and *National Cable Television Association v. United States*, 415 U.S. 336, 94 S.Ct. 1146, 39 L.Ed.2d 370 (1974). Congress has treated the subject matter of exemptions in a detailed and comprehensive manner in § 522 of the Code. The framework and principles of that section are those Congress intended that the States use when acting under the authority delegated to them. *In re Rhodes*, 14 B.R. 629, (Bkrtcy.M.D.Tenn.1981).

The Illinois exemptions allow a debtor who qualifies as a householder to take a $10,000 homestead exemption, necessary

wearing apparel, Bible, school books, family pictures and $300 worth of additional property can be exempted. Debtors who are head of families are allowed to exempt an additional $700 worth of property, pensions, compensation bonuses received from the United States or from the State of Illinois can also be exempted.

Notably these exemptions discriminate against renters and fail to protect a debtor's household goods. Congress made a general exemption in § 522(d)(1) and (d)(5) to insure that homeowners and nonhomeowners would have equal fresh starts. *Matter of Smith*, 640 F.2d 888, 891 (7th Cir. 1981). This is particularly important in an urban setting where most of the population live in rented apartments.

Household goods are of little value to creditors but expensive for debtors to replace. They are essential for a debtor's well-being and fresh start. In § 522(f) Congress provided for avoidance of certain liens on this type of property to eliminate unconscionable collection practices and to promote fresh starts.

The Illinois exemptions provide nothing comparable to § 522(d)(5) and § 522(d)(3) and therefore fail to provide debtors with property Congress found necessary for them to have fresh starts. The exercise by Illinois of the opt out provision in § 522(b)(1) goes beyond the authority Congress delegated to Illinois when Congress enacted that section. Public Act 81–1505 directly conflicts with the policies of Congress found in § 522(d). Public Act 81–1505 is invalid under the Supremacy Clause of the Constitution.

Beneficial does assert that because its lien was created prior to October 1, 1979, the effective date of the Bankruptcy Code, the use of § 522(f) to avoid its lien would constitute an unlawful taking of its property without due process of law. The court is of the opinion that Congress intended § 522(f) to apply to liens existing on October 1, 1979 and that avoidance of such liens is not unconstitutional.

Section 522(f) provides that:

Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—

\* \* \* \* \* \*

(2) a nonpossessory, nonpurchase-money security interest in any—

(A) household furnishings, household goods, wearing apparel, appliances, books, animals, crops, musical instruments, or jewelry that are held primarily for the personal, family, or household use of the debtor or a dependent of the debtor; ...

Bankruptcy Judge Ralph Mabey has analyzed in great detail the questions of the retrospective application of § 522(f) and the constitutionality of such application in his learned opinion in *In re Pillow*, 8 B.R. 404 (Bkrtcy.D.Utah 1981). This court agrees with Judge Mabey's analysis and respectfully adopts his opinion in support of its conclusion. This conclusion is also supported by Bankruptcy Judge Richard Speer's opinion in *In re Marinski*, 9 B.R. 579 (Bkrtcy.N.D.Ohio 1981), and that of Bankruptcy Judge Marvin R. Wooten in *In re Mahoney*, 15 B.R. 482 (Bkrtcy.W.D.N.C.1981).

Section 522(f) applies to liens existing on the effective date of the Bankruptcy Code. There is no suggestion in the language of § 522(f) that it refers only to liens created after any particular date. The purpose of § 522(f), as expressed in the legislative history, is to end efforts to collect dischargeable debts. Congress found as noted that household property is of itself of little or no value to creditors. The threat of repossession, is, however, and Congress sought to remove this threat for debtors who filed bankruptcy cases on and after October 1, 1979.

This is a proper interpretation of the effect of § 522(f) for the § 522(d) exemptions and other provisions of § 522 must apply to all property a debtor owns on October 1, 1979, regardless of when he

784

obtained the property. To accept the limitations Beneficial would impose on subsection (f) leads to the next argument that the exemptions and other provisions of § 522 can effect property purchased or obtained only on or after October 1, 1979. This is ridiculous. So long as subsection (f) is not unconstitutional it must apply to all property held on October 1, 1979.

The court's conclusion is further supported by the absence of a savings clause for the type of security interest Beneficial claims as of the effective date of the Code. Section 522(f) is available to all debtors who file petitions after October 1, 1979 regardless of when liens were created.

■ Modification of Beneficial's rights under Mrs. Bradshaw's security agreement does not deprive Beneficial of property without due process. Beneficial's right to Mrs. Bradshaw's property arises only when certain specific conditions occur. The Code modifies the contract between Beneficial and Mrs. Bradshaw in such a way that Beneficial loses a right it had under the contract. As noted by Judge Mabey all bankruptcy statutes have done away with creditors' rights and have been vigorously attacked for doing so. But Congress has the constitutional authority under its bankruptcy power to avoid creditors' rights including liens.

The court concludes that Mrs. Bradshaw may avoid Beneficial's nonpossessory, non-purchase money security interest in household goods because she is entitled to the federal exemptions and the allowance of Beneficial's lien would impair exemptions to which Mrs. Bradshaw is entitled.

It is therefore ordered that judgment is rendered for Karen Bradshaw, debtor-plaintiff, and against Beneficial Finance Company of Illinois, Inc., defendant-counterplaintiff, on the complaint to declare Illinois Public Act 81–1505 unconstitutional and to avoid defendant-counterplaintiff's lien on property which impairs an exemption under § 522(d) and for Karen Bradshaw, debtor-counterdefendant, and against Beneficial Finance Company of Illinois, Inc., defendant-counterplaintiff, on Beneficial's coun-

terclaim for a judgment and to lift the automatic stay.

It is further ordered that the lien of Beneficial Finance Company of Illinois, Inc. is void and held for naught as to any household goods pledged as security by Karen Bradshaw, debtor, and any indebtedness allegedly owed Beneficial Finance Company of Illinois, Inc. by Karen Bradshaw, debtor, is discharged in these proceedings.