In re Isabelle Louise LOCARNO, Debtor.

**Howard A. RUBENSTEIN Trustee in Bankruptcy, Plaintiff,**

v.

**Stephen H. SACHS Attorney General of the State of Maryland, and Isabelle Louise Locarno, Defendants.**

**Bankruptcy No. 81–2–2412.
Adv. No. 81–1519.**

United States Bankruptcy Court, D. Maryland.

Oct. 1, 1982.

Howard A. Rubenstein, Baltimore, Md., for plaintiff/trustee.

Richard E. Israel, Asst. Atty. Gen., Annapolis, Md., for defendant Stephen H. Sachs, Attorney General of Maryland.

Arthur D. Webster, Salisbury, Md., for defendant/debtor Isabelle Louise Locarno.

## MEMORANDUM OPINION AND ORDER

JAMES F. SCHNEIDER, Bankruptcy Judge.

This matter came on for hearing before the United States Bankruptcy Court for the District of Maryland at Baltimore on August 31, 1982 upon the Trustee's amended complaint to deny the debtor's claim of state exemptions by declaring unconstitutional subsections 11–504(f)(1) and (f)(2) of the Courts and Judicial Proceedings Article of the Maryland Annotated Code (1981 Supp.). The debtor counterclaimed for a judgment declaring § 11–504 unconstitutional in its entirety and permitting her to claim the federal exemptions under 11 U.S.C. § 522(d) (Supp. IV 1980).

The Trustee argued at trial that subsections 11–504(f)(1) and (f)(2) are unconstitutional because they violate the Supremacy Clause of the United States Constitution (Article 6, cl. 2). He contends that in failing to provide the same categories of exemptions which the Bankruptcy Code accords to homeowners and nonhomeowners alike, the Maryland General Assembly has exceeded the power delegated by Congress to the states under 11 U.S.C. § 522(b)(1) to enact their own bankruptcy exemptions and "opt-out" of the federal scheme. (It is to be noted that the assertion by the Trustee that subsection 11–504(f)(2) is unconstitutional is presently the law in this district, having been so stated in the case of *In re Davis,* 16 B.R. 62 (Bkrtcy.1981) by the Honorable Roger M. Whelan, Bankruptcy Judge for the District of Columbia, sitting in this Court by special designation.) The Trustee's position regarding the remainder of the state exemptions contained in Section 11–504 is that they are severable from the invalid portions of the Act and are therefore constitutional.

The debtor agrees with the Trustee that subsections 11–504(f)(1) and (f)(2) are unconstitutional, but parts company with him on the validity of the remainder of the statute, arguing that Section 11–504 is unconstitutional in its entirety because the subsections are not severable.

The Attorney General argues that this Court is without jurisdiction to decide this controversy because it is not a Court constituted under Article III of the United States Constitution. On the merits of the case, he takes the alternate positions that the enactment of Section 11–504 was either in compliance with a permissable delegation of Congressional power, or that there was no delegation, but rather an abstention of federal action in this area.

## JURISDICTION

The jurisdictional assault mounted by the Attorney General is based upon the recent decision of the Supreme Court of the United States in the case of *Northern Pipeline Construction Co. v. Marathon Pipeline Co.,* —— U.S. ——, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), which held unconstitutional the extensive jurisdiction of bankruptcy courts granted by Congress in 28 U.S.C. § 1471. The Court stayed its judgment until October 4, 1982 in order to "afford Congress an opportunity to reconstitute the bankruptcy courts or to adopt other valid means of adjudication, without impairing the interim administration of the bankruptcy laws."

*Id.,* —— U.S. at ——, 102 S.Ct. at 2880, 73 L.Ed.2d at 626.

The stay issued by the Supreme Court was unconditional and not limited to purely administrative matters. *Armco, Inc. v. Cherry Pond Coal Co.,* 21 B.R. 592 (D.C.S.D. W.Va.1982); *In re Otero Mills, Inc.,* 21 B.R. 645, 3 Bankr.L.Rep. (C.C.H.) ¶ 68,754 (Bkrtcy.N.M.1982); *In re O.P.M. Leasing Services, Inc.,* 21 B.R. 986, 3 Bankr.L.Rep. (C.C.H.) ¶ 68,753 (Bkrtcy.S.D.N.Y.1982). To exercise less than the full jurisdiction of the bankruptcy court "would fly in the face of the Supreme Court mandate directed at orderly administration and open the floodgates of the courthouse to a deluge of similar disruptive motions during this interim period." *O.P.M. Leasing Services, supra.*

The language employed by the Supreme Court in granting the stay in *Northern Pipeline* is borrowed from its decision in *Buckley v. Valeo,* 424 U.S. 1, 142–143, 96 S.Ct. 612, 693, 46 L.Ed.2d 659, 751 (1976), which is cited as authority for its action. The judgment in *Buckley* was stayed for thirty days to permit the improperly constituted Federal Election Commission to continue to exercise its powers with the exception of those powers which the Court found to be *per se* unconstitutional. Unlike *Buckley, Northern Pipeline* did not deal with whether the powers to be exercised by bankruptcy judges pursuant to 28 U.S.C. § 1471 were in and of themselves unconstitutional. Rather the Court simply stated the constitutional requirement that federal judicial power of the kind required to resolve the plenary action represented in *Northern Pipeline* can be exercised only by Article III judges. *Armco, supra,* at 594.

Even were this Court to hold that its jurisdiction was restricted during the stay of the decision in *Northern Pipeline Co.,* proper jurisdiction lies in this case. The traditional summary jurisdiction of this Court includes determining "all claims of bankrupts to their exemptions," 11 U.S.C. § 11(a)(11) (Supp. III 1976, repealed by the Bankruptcy Reform Act of 1978, Pub.L. 95–598, 92 Stat. 2549 (1978)). Determining the validity of exemptions claimed by debt-

ors under federal bankruptcy law is an inherently federal question. The question is essential to the smooth and orderly administration of the bankruptcy laws and vital to the exercise of the bankruptcy power, which the Constitution designated as a federal power. U.S. Const. Art. I, § 8 cl. 4.

Making that determination requires this Court to consider the validity of the Maryland exemptions which are applied in federal bankruptcy cases by the provisions of 11 U.S.C. § 522(b). The determination is made in this case in a controversy involving property in the actual or constructive possession of the Court, not property in the possession of a third party. Such an adjudication is the same as the exercise of the bankruptcy courts' summary jurisdiction under the 1898 Bankruptcy Act, *See Northern Pipeline Co.,* —— U.S. at ——, 102 S.Ct. at 2862, 73 L.Ed.2d at 603–04. The Supreme Court distinguished between "the restructuring of debtor-creditor relations, which is at the core of the federal bankruptcy power" and "the adjudication of state-created private rights, such as the right to recover contract damages." *Id.,* —— U.S. at ——, 102 S.Ct. at 2871, 73 L.Ed.2d at 615. *Northern Pipeline* dealt with a debtor's suit against a creditor for breach of contract damages. The instant case involves a Trustee's challenge to the debtor's claim of exemptions. Unlike *Northern Pipeline,* no underlying state right of action is present here.

For all these reasons, this Court concludes that it has jurisdiction over the instant controversy during the pendency of the stay granted by the United States Supreme Court in the case of *Northern Pipeline, supra.*

## IMPROPER JOINDER OF STATE

■ The Trustee improperly filed suit in this case against the State of Maryland. The Supreme Court has construed the Eleventh Amendment to the U.S. Constitution to bar suits in federal court brought against a state by its citizens. *Ex Parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). However, this error was cured by the sub-

stitution with the state's consent of Stephen H. Sachs, Attorney General of Maryland, as a defendant, which was effected by Order of this Court dated September 30, 1982.

### FINDINGS OF FACT

This opinion adopts as its factual basis the background set forth in the debtor's "Memorandum of Law":

On August 17, 1981, Defendant, Isabelle Louise Locarno, filed a voluntary Petition in this Court seeking relief under Chapter 7, Title 11, of the United States Code. At the time of the filing of the Petition, Debtor owned certain real property known as 221 Pineway, Salisbury, Wicomico County, Maryland 21801, which Debtor leased to a third party to generate rental income. Said real property was listed by Debtor on Schedule B–1 filed with her Petition. The property was valued at $13,000.00 and Debtor indicated that there were certain secured liens on the property which totalled $8,925.18. Debtor claimed her aggregate interest in the real property, which totalled $4,074.82, as exempt pursuant to Maryland Courts and Judicial Proceedings Code Annotated, § 11–504(f)(1).

Subsequent to the filing of the Petition, a contract of sale was entered into and after proper notice was given pursuant to the rules of this Court, the property was sold to Thomas C. and Kathryn A. Wieland. The Trustee reported to the Court that he retained as net proceeds of the sale [the sum of] $844.59.

### FEDERAL EXEMPTIONS VS. STATE EXEMPTIONS

In its enactment of the Bankruptcy Reform Act of 1978, P.L. No. 95–598 (November 6, 1978), 11 U.S.C. §§ 101 *et seq.* (the "Code"), Congress provided in subsection 522(d) a detailed list of federal exemptions available to a debtor, unless pursuant to subsection 522(b)(1), "the State law that is applicable to the debtor ... specifically does not so authorize." The provisions of subsections 522(b) and (d) are set forth as follows:

(b) Notwithstanding section 541 of this title, an individual debtor may exempt from property of the estate either—

(1) property that is specified under subsection (d) of this section, unless the State law that is applicable to the debtor under paragraph (2)(A) of this subsection specifically does not so authorize; or, in the alternative,

(2)(A) any property that is exempt under Federal law, other than subsection (d) of this section, or State or local law that is applicable on the date of the filing of the petition at the place in which the debtor's domicile has been located for the 180 days immediately preceding the date of the filing of the petition, or for a longer portion of such 180-day period than in any other place; and

(B) any interest in property in which the debtor had, immediately before the commencement of the case, an interest as a tenant by the entirety or joint tenant to the extent that such interest as a tenant by the entirety or joint tenant is exempt from process under applicable nonbankruptcy law.

.    .    .    .    .

(d) The following property may be exempted under subsection (b)(1) of this section:

(1) The debtor's aggregate interest, not to exceed $7,500 in value, in real property or personal property that the debtor or a dependent of the debtor uses as a residence, in a cooperative that owns property that the debtor or a dependent of the debtor uses as a residence, or in a burial plot for the debtor or a dependent of the debtor.

(2) The debtor's interest, not to exceed $1,200 in value, in one motor vehicle.

(3) The debtor's interest, not to exceed $200 in value in any particular item, in household furnishings, household goods, wearing apparel, appliances, books, animals, crops, or musical instruments, that are held primarily for the personal, family, or household use

of the debtor or a dependent of the debtor.

(4) The debtor's aggregate interest, not to exceed $500 in value, in jewelry held primarily for the personal, family, or household use of the debtor or a dependent of the debtor.

(5) The debtor's aggregate interest, not to exceed in value $400 plus any unused amount of the exemption provided under paragraph (1) of this subsection, in any property.

(6) The debtor's aggregate interest, not to exceed $750 in value, in any implements, professional books, or tools, of the trade of the debtor or the trade of a dependent of the debtor.

(7) Any unmatured life insurance contract owned by the debtor, other than a credit life insurance contract.

(8) The debtor's aggregate interest, not to exceed in value $4,000 less any amount of property of the estate transferred in the manner specified in section 542(d) of this title, in any accrued dividend or interest under, or loan value of, any unmatured life insurance contract owned by the debtor under which the insured is the debtor or an individual of whom the debtor is a dependent.

(9) Professionally prescribed health aids for the debtor or a dependent of the debtor.

(10) The debtor's right to receive—

(A) a social security benefit, unemployment compensation, or a local public assistance benefit;

(B) a veterans' benefit;

(C) a disability, illness, or unemployment benefit;

(D) alimony, support, or separate maintenance, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor;

(E) a payment under a stock bonus, pension, profit-sharing, annuity, or similar plan or contract on account of illness, disability, death, age, or length of service, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor, unless—

(i) such plan or contract was established by or under the auspices of an insider that employed the debtor at the time the debtor's rights under such plan or contract arose;

(ii) such payment is on account of age or length of service; and

(iii) such plan or contract does not qualify under section 401(a), 403(a), 403(b), 408, or 409 of the Internal Revenue Code of 1954 (26 U.S.C. § 401(a), 403(b), 408, or 409).

(11) The debtor's right to receive, or property that is traceable to—

(A) an award under a crime victim's reparation law;

(B) a payment on account of the wrongful death of an individual of whom the debtor was a dependent, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor;

(C) a payment under a life insurance contract that insured the life of an individual of whom the debtor was a dependent on the date of such individual's death, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor;

(D) a payment, not to exceed $7,500, on account of personal bodily injury, not including pain and suffering or compensation for actual pecuniary loss, of the debtor or an individual of whom the debtor is a dependent; or

(E) a payment in compensation of loss of future earnings of the debtor or an individual of whom the debtor is or was a dependent, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor.

.    .    .    .    .

On May 19, 1981, the Maryland General Assembly chose to "opt-out" of the foregoing federal exemptions by enacting Acts 1981, ch. 765, which reenacted with amendments Section 11–504 of the Courts and Judicial Proceedings Article of the Mary-

land Code, effective July 1, 1981, "altering exemptions from execution on a judgment and in bankruptcy and prohibiting a debtor from electing the federal bankruptcy exemptions." Section 11–504 is set forth in its entirety as follows:

§ 11–504. Exemptions from execution.

(a) Definitions.—(1) In this section, the following terms have the meanings indicated.

(2) "Value" means fair market value as of the date upon which the execution or other judicial process becomes effective against the property of the debtor, or the date of filing the petition under the United States bankruptcy code.

(b) In general.—The following items are exempt from execution on a judgment.

(1) Wearing apparel, books, tools, instruments, or appliances necessary for the practice of any trade or profession except those kept for sale, lease, or barter.

(2) Money payable in the event of sickness, accident, injury, or death of any person, including compensation for loss of future earnings. This exemption includes but is not limited to money payable on account of judgments, arbitrations, compromises, insurance, benefits, compensation, and relief. Disability income benefits are not exempt if the judgment is for necessities contracted for after the disability is incurred.

(3) Professionally prescribed health aids for the debtor or any dependent of the debtor.

(4) The debtor's interest, not to exceed $500 in value, in household furnishings, household goods, wearing apparel, appliances, books, animals kept as pets, and other items that are held primarily for the personal, family, or household use of the debtor or any dependent of the debtor.

(5) $3,000 or property of any kind equivalent in value to $3,000.

(c) Appraisal.—If the debtor elects to exempt property in accordance with subsections (b)(4) and (b)(5) of this section, the sheriff shall obtain a signed appraisal

by a disinterested appraiser of the property selected by the debtor. The appraisal shall be returned with the writ.

(d) Waiver.—The debtor may not waive, by cognovit note or otherwise, the provision of subsection (b) of this section.

(e) Wage attachments.—The exemptions in this section do not apply to wage attachments.

(f) Additional exemption; condition.—(1) In addition to the exemptions provided in § 11–504(b) of this subtitle, and in other statutes of this State, in any proceeding under Title 11 of the United States Code, entitled "Bankruptcy," any individual debtor domiciled in this State may exempt the debtor's aggregate interest, not to exceed $4,500 in value, in real property or personal property that the debtor or a dependent of the debtor uses as a residence, or in a cooperative that owns property that the debtor or a dependent of the debtor uses as a residence.

(2) As a condition to this exemption, the debtor shall show by a preponderance of the evidence that he has attempted to renegotiate a repayment schedule with his creditors.

(g) Federal bankruptcy exemptions.—In any bankruptcy proceeding, a debtor is not entitled to the federal exemptions provided by § 522(d) of the United States bankruptcy code.

\* \* \* \* \*

By comparing the two exemption statutes set forth above, one discerns a marked difference in the manner in which each deals with homeowners as opposed to nonhomeowners.

In subsection 11–504(b)(5), the Maryland statute makes available to all debtors a $3,000 exemption in property of any kind. But in subsection 11–504(f)(1), only homeowner-debtors are given the benefit of exempting an additional $4,500 in their residences.

This is contrasted with § 522(d)(1) of the Bankruptcy Code which grants to a homeowner an exemption not to exceed $7,500 in his or her residence (and to all debtors the

same exemption as to burial plots), and then to the homeowner and nonhomeowner alike the unused balance of the homestead exemption coupled with a $400 exemption to be applied against property of any kind in § 522(d)(5). This so-called "cafeteria" or "wild card" exemption provided by § 522(d)(5) equalizes the treatment of homeowners and nonhomeowners by permitting members of both groups to claim as exempt the same amount up to $7,900.

In the instant case, none of the debtor's interest in the real estate known as 221 Pineway, Salisbury, Maryland could have been claimed as exempt under § 11–504(f)(1) because she leased it to others and did not use it as a residence. But if she were permitted to avail herself of the federal exemption provided in 11 U.S.C. § 522(d)(5), she would have been able to exempt up to $7,900 of its value.

### ANALYSIS OF THE CONFLICT

The test of whether a state statute conflicts with federal bankruptcy legislation and is therefore unconstitutional in light of the Supremacy Clause is set forth in the leading case of *Perez v. Campbell,* 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971). There the United States Supreme Court established "a two-step process of first ascertaining the construction of the two statutes and then determining the constitutional question whether they are in conflict." 402 U.S. at 644, 91 S.Ct. at 1708. The Court then indulged in a detailed analysis of the legislative history of the state law in question and considered the decisions of the state courts that construed it to determine its purpose and effect.

In the case *sub judice,* there is neither legislative history nor cases decided by the highest courts of Maryland which have construed the recently-enacted statute. Nevertheless, a simple reading of § 11–504 indicates that it is an exemption statute which was enacted for the general purpose of benefitting debtors by permitting them to make a fresh start in life. *Cf. In re Vasko,* 6 B.R. 317, 320 (Bkrtcy.N.D.Ohio W.D.1980).

Unlike the state statute, there is ample legislative history and case law on record delineating the underlying motivation for the enactment by Congress of exemptions in the Bankruptcy Code.

However, some State exemption laws have not been revised in this century. Most are outmoded, designed for more rural times and hopelessly inadequate to serve the needs of and provide a fresh start for modern urban debtors. The historical purpose of these exemption laws has been to protect a debtor from his creditors, to provide him with the basic necessities of life so that even if his creditors levy on all of his nonexempt property, the debtor will not be left destitute and a public charge. The purpose has not changed, but neither have the level of exemptions in many States. Thus, the purpose has been largely defeated.

Though exemption laws have been considered within the province of State law under the current Bankruptcy Act, H.R. 8200 adopts the position that there is a Federal interest in seeing that a debtor that [sic] goes through bankruptcy comes out with adequate possessions to begin his fresh start. Recognizing, however, that circumstances do vary in different parts of the country, the bill permits the States to set exemption levels appropriate to the locale, and allows debtors to choose between the State exemptions and the Federal exemptions provided in the bill. Thus, the bill continues to recognize the States' interest in regulating credit within the States, but enunciates a bankruptcy policy favoring a fresh start.

H.R.Rep.No.95–595, 95th Cong., 1st Sess. 126 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6087. *See also Matter of Smith,* 640 F.2d 888 (7th Cir. 1981); *In re Rhodes,* 14 B.R. 629 (Bkrtcy.M.D.Tenn. 1981); *In re Balgemann,* 16 B.R. 780 (Bkrtcy.N.D.Ill.E.D.1982).

From the foregoing analysis, it might appear that the Maryland statute is in harmony with the Bankruptcy Code because both acts seem to share a common purpose and a noble one, namely, the protection of debt-

ors. This, however, is only the beginning of our analysis.

The next step in the test enunciated in *Perez, supra,* is the determination of the effect of the state law on the federal law and whether they are in conflict. The *Perez* Court held that an ostensibly noble and valid purpose will not save a state statute that conflicts with a federal one. 402 U.S. at 649–654, 91 S.Ct. at 1711–1713. In so doing, it reaffirmed Chief Justice Marshall's statement of the governing principle underlying the Supremacy Clause, set forth in *Gibbons v. Ogden,* 9 Wheat. 1, 6 L.Ed. 23 (1824), that "acts of the State Legislatures . . . [which] *interfere with,* or are contrary to the laws of Congress, made in pursuance of the constitution," are invalid. *Id.,* 402 U.S. at 649, 91 S.Ct. at 1711.

This Court finds that in preferring one class of debtor over another class, by denying to nonhomeowner-debtors the same treatment afforded to homeowner-debtors, the Maryland exemption statute conflicts with the avowed policy of the Congress in enacting the Bankruptcy Code of granting to all debtors a "fresh start." Because of the failure of the Maryland General Assembly to provide a comparable exemption to nonhomeowners as it provided to homeowners in § 11–504(f)(1), it has exceeded the Congressional delegation of power to "opt-out" of the federal exemptions, thus rendering § 11–504(g) unconstitutional and void.

## HOW "OPT–OUT" POWER WAS ABUSED

It is the position of the Attorney General that the State of Maryland has not been preempted by Congress from enacting any sort of exemptions it chooses, citing *Sturges v. Crowninshield,* 4 Wheat. 122, 196–199, 4 L.Ed. 529 (1819) for the proposition that in so doing, the states are exercising their residual powers to the extent that Congress has not acted to preempt them. The case of *Matter of Sullivan,* 680 F.2d 1131 (7th Cir. 1982) is also cited by him for its holding that in permitting the states to "opt-out" of the federal exemptions enumerated in the Bankruptcy Code, the Congress did not unconstitutionally delegate power to the states in their enactment of exemption statutes.

This Court agrees with *Sullivan, supra,* to the extent that it holds 11 U.S.C. § 522(b)(1) to be a *constitutional* delegation of power to the states. To the extent that it holds that the subsection is *not a delegation* of power, *Sullivan* is *contra* to the opinion of this Court in the instant case and in the case of *In re Davis, supra.* It will be recalled that in his holding that subsection 11–504(f)(2) is unconstitutional, Judge Whelan very persuasively stated:

Even if the statute did not conflict directly with the legislative scheme, it would be unconstitutional because it falls outside the bounds of the Congressional delegation of power. Any delegation of legislative authority must be contained within boundaries. Unbridled delegations of authority are antithetical to the separation of powers that is at the heart of the federal system.

*Davis, supra,* at 64, citing *Industrial Union Department v. American Petroleum Institute,* 448 U.S. 607, 100 S.Ct. 2844, 65 L.Ed.2d 1010 (1980); *Schechter Poultry Corp. v. United States,* 295 U.S. 495, 55 S.Ct. 837, 79 L.Ed. 1570 (1935); *Panama Refining Co. v. Ryan,* 293 U.S. 388, 55 S.Ct. 241, 79 L.Ed. 446 (1935).

In adopting the detailed exemption provisions of 11 U.S.C. § 522(d), Congress implicitly bound the states to adopt a corresponding scheme of exemptions. "Congress has treated the subject matter of exemptions in a detailed and comprehensive manner in § 522 of the Code. The framework and principles of that section are those Congress intended that the states use when acting under the authority delegated to them." *In re Balgemann, supra.*

In the recent case of *Cheeseman v. Nachman,* 656 F.2d 60 (1981), the Fourth Circuit Court of Appeals speaking through Judge Ervin held that Congress delegated authority to the states to set exemption *levels.* "It does not follow, however, that the states should be left free to classify which bankrupt debtors should be entitled to exemp-

tions when the classification conflicts with federal law." *Id.* at 64.

The argument that the Court's comments in *Cheeseman* apply solely to the requirement of 11 U.S.C. § 522(m) that each spouse be permitted to file separate claims of exemption in a joint case, is not persuasive. The opinion in *Cheeseman* quotes the explanation of the House Judiciary Committee regarding the exemption provisions contained in the Bankruptcy Reform Act of 1978. *House Report, supra,* at 126, 361.

In this regard, *Sullivan, supra,* would seem to be at odds with the holding of the Fourth Circuit in *Cheeseman, supra.* The Seventh Circuit held in *Sullivan* that the legislative history of the House bill should carry no weight in construing the exemption provisions contained in the Code because the inclusion of the "opt-out" provisions in § 522(b)(1) represented a compromise with the Senate, which preferred to leave the matter of exemptions to the states. *Sullivan* went so far as to hold that "the intention of providing a 'fresh start' can be attributed only to the House." *Id.* at 1136. If the decision in *Sullivan* is correct in terms of the foregoing statement, the rationale for enacting the Bankruptcy Code is negated.

The Seventh Circuit was surely correct in its reasoning as to why the Congress enacted the so-called "cafeteria" or "wild card" exemption in § 522(d)(5) when it held that

> The general exemption was intended to ensure that there was no discrimination between homeowners and nonhomeowners in achieving [the] goal [of providing a fresh start to debtors]. By permitting non-homeowners (or homeowners with property valued under $7,500) to exempt the unused portion of the homestead exemption, plus $400, Congress in effect gave all debtors potentially the same $7,900 stake.

*Matter of Smith, supra.*

█ The second step in the *Perez* test leads to the conclusion that the "opt-out" provision of the Maryland exemption statute is unconstitutional because in operation it works at cross-purposes with the federal exemption scheme. Under the doctrine of *Sturges v. Crowninshield, supra,* state bankruptcy laws are invalid only to the extent that they actually conflict with bankruptcy legislation enacted by Congress. Such a conflict is presented by the state's denial to renters of the same fresh start that it provides to homeowners and that the Code provides to renters and homeowners alike. *Accord, In re Rhodes, supra; In re Balgemann,* supra.

## SEVERABILITY OF THE "OPT–OUT" PROVISION FROM REMAINDER OF THE STATE EXEMPTION STATUTE

█ Subsection 11–504(g) is found to be severable from the remainder of the Maryland exemption statute on two grounds. First, if there is no "opt-out" provision which prevents a debtor from claiming the federal exemptions, the state is free to enact such exemptions as it has, without fear of exceeding the scope of the power delegated by Congress. It is this abuse of the delegated power which rendered invalid the action of the state. To hold unconstitutional the state exemptions themselves, absent an "opt-out" of the federal exemptions would defeat the congressional purpose of giving debtors a choice between the state and federal exemptions. *House Report* at 360.

█ Second, whether one section of a state statute is severable from another is a question of state law. *Morey v. Doud,* 354 U.S. 457, 471, n. 16, 77 S.Ct. 1344, 1350, 1 L.Ed.2d 1485, 1494 (1957); *Chaplinsky v. New Hampshire,* 315 U.S. 568, 62 S.Ct. 766, 86 L.Ed. 1031 (1942). The Court of Appeals of Maryland has enunciated a two-part test of severability: (1) whether the General Assembly would have enacted the statute without the invalid portion and (2) whether the statute effectively carries out the legislative intent in the absence of the invalid portion. *Ocean City Taxpayers v. Mayor and City Council of Ocean City,* 280 Md. 585, 375 A.2d 541 (1977); *Shell Oil Co. v. Supervisor of Assessments,* 276 Md. 36, 343

A.2d 521 (1975); *City of Baltimore v. A.S. Abell Co.,* 218 Md. 273, 145 A.2d 111 (1958).

█ Utilizing the foregoing test, this Court concludes that the enactment of exemptions by the Maryland General Assembly was a distinctly separate legislative function from the enactment of the "opt-out" provision, each enactment serving a different purpose. Subsections (b) and (f)(1) may be viewed simply as serving the legislative intent of modernizing exemptions available to debtors. This is further supported by the record of the last nine years in which the statute has been amended six times. Acts 1981, ch. 765; Acts 1980, ch. 546; Acts 1977, ch. 356; Acts 1976, ch. 383; Acts 1975, ch. 430; Acts 1974, ch. 316.

In the case of *In re Grimes,* 18 B.R. 132 (Bkrtcy.1982), in which the claim was not raised that subsection 11–504(f)(1) is unconstitutional, Judge Paul Mannes speaking for this Court held that the Legislature intended that subsection to exempt homestead property from execution as well as in bankruptcy. And in finding subsection 11–504(f)(2) unconstitutional in *In re Davis, supra,* Judge Whelan held that it was severable from the remainder of the statute. *Id.* at 63.

Because the remaining valid portion of § 11–504 of the Courts and Judicial Proceedings Article of the Maryland Code carries out the proper state purpose of establishing exemptions from execution and in bankruptcy in the absence of the offensive "opt-out" provision, and because this Court is unable to state that the General Assembly would not have enacted those exemptions without the accompanying "opt-out," it follows that the subsections of the statute other than (f)(2) and (g) abide in full force and effect.

The result of this decision will be to permit Maryland debtors in bankruptcy to elect to claim either the state or federal exemptions, as they were able to do before July 1, 1981.

### THIS DECISION TO HAVE ONLY PROSPECTIVE EFFECT

█ Having concluded that Maryland's prohibition against the claiming of federal exemptions by debtors is constitutionally invalid as violative of the Supremacy Clause, this Court must next determine whether to apply its decision retroactively to the date the prohibition was enacted. The Supreme Court has set forth three considerations bearing on this question: (1) whether the holding decided an issue of first impression, the resolution of which was not foreshadowed by earlier cases; (2) whether retroactive application will advance or retard the operation of the decision in question; and (3) whether retroactive application could produce substantial inequitable results in individual cases. *Northern Pipeline Co., supra; Chevron Oil Co. v. Huson,* 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971).

█ All of the foregoing considerations militate against the retroactive application of this decision. The scope of the delegation of power by Congress in 11 U.S.C. § 522(b) and the constitutionality of Md. Cts. and Jud.Proc. § 11–504(g) are matters of first impression in this district. There is a split of authority among the courts in the handful of other districts which have ruled on the constitutionality of similar state laws which may never be resolved. In this Court, the constitutionality of the state exemption statute has been raised in less than ten cases since the law took effect more than a year ago. Retroactive application of today's decision would not only impair the smooth operation of this Court, but would likely visit hardship and injustice upon those whose reliance upon the statute has proved to be misplaced.

This Court therefore holds that the decision in this case shall be given only prospective effect, except in those cases in which the constitutionality of subsections 11–504(f)(1) and (g) have already been raised.

### ORDER OF COURT

NOW THEREFORE, it is this 1st day of October, 1982 by the United States Bankruptcy Court for the District of Maryland sitting at Baltimore.

ORDERED, ADJUDGED AND DE-CREED that Section 11–504(g) of the Courts and Judicial Proceedings Article of the Annotated Code of Maryland is hereby declared to be unconstitutional for the reasons set forth in the foregoing Opinion; and it is

FURTHER ORDERED, ADJUDGED AND DECREED that the relief prayed by the Trustee in the Amended Complaint filed in this case be and the same is hereby GRANTED; and it is

FURTHER ORDERED, ADJUDGED AND DECREED that the relief prayed by the Debtor in the "Cross-Complaint" filed in this case be and the same is hereby DENIED; and it is

FURTHER ORDERED, ADJUDGED AND DECREED that Section 11–504(g) is severable from the remaining provisions of Section 11–504 which have not been declared to be unconstitutional; and it is

FURTHER ORDERED, ADJUDGED AND DECREED that the decision in this case shall be given only prospective effect from the date hereof, except in cases in which the issue of the constitutional validity of Section 11–504 has been previously raised.