**In the Matter of Carl J. BESSEL, Linda Bessel, d/b/a Carl J. Bessel (farm), Carl's Auto & Tractor Repair, Carl J. Bessel & Son, Debtors.**

**Bankruptcy No. MM7–81–01242.**

United States Bankruptcy Court, W. D. Wisconsin.

March 15, 1982.

John R. Manning, Wisconsin Rapids, Wis., for debtors.

William J. Rameker, Murphy, Stolper, Brewster & Desmond, S. C., Madison, Wis., for trustee.

## MEMORANDUM DECISION

ROBERT D. MARTIN, Bankruptcy Judge.

On July 21, 1981, Carl J. Bessel and Linda Bessel filed a petition in bankruptcy under chapter 7 and William Rameker was appointed interim trustee. On August 17, Rameker became the elected trustee by virtue of 11 U.S.C. § 702(d) and on August 27, he filed a report of exempt property and mailed a copy to the Bessels. In the report, Rameker disallowed the homestead exemption claimed by Carl J. Bessel for the "Sigal property" on the grounds that it was no longer homestead property. The property in question was in the process of judicial foreclosure and sale when the bankruptcy petition was filed, and the debtors were living on other property in Richland Center.

The Bessels received the report no earlier than August 28, 1981. On September 14, 1981, they filed an objection to the trustee's report. They then filed an amendment to their exemption schedules on September 28, 1981. By the amendment, Mrs. Bessel switched from state exemptions to federal exemptions, while Mr. Bessel changed from federal exemptions to state. In her original exemption schedules Mrs. Bessel claimed an exemption in a truck that was actually owned by Mr. Bessel. In the new schedules Mr. Bessel claimed the truck. The debtors continued to claim a homestead exemption for the "Sigal property," and claimed (additionally or alternatively) a homestead exemption for the real estate in Richland Center.

On October 6, 1981, Rameker filed a motion to quash both the objection to the trustee's report and the debtors' amended schedules arguing that they had not been timely filed under Bankruptcy Rule 403(c). The Bessels responded that (1) the Code abolishes the trustee's report and, therefore, the debtors had no duty to respond, (2) the trustee's report was not timely filed and was, therefore, of no effect, and (3) the objections were timely filed.

Bankruptcy Rule 403(b) requires that the trustee file no later than 15 days after he qualifies a report setting out the exemptions claimed by the debtors which are not allowable. Once the report is filed, the debtors have 15 days to object to the report. There is no affirmative duty upon the trustee prescribed by 11 U.S.C. § 704 to file an exemption report. There is not, however, any prohibition upon the trustee following the procedure of Bankruptcy Rule 403(b). In this case, the trustee chose to do so. Bankruptcy Rules are effective to the extent not inconsistent with the Bankruptcy Reform Act of 1978. § 405(d), Pub.L. 95–598 (Nov. 6, 1978), 92 Stat. 2549.

The Bessels contend that the trustee did not comply with the 15-day time limit prescribed in Bankruptcy Rule 403. That contention depends upon a determination that an interim trustee has the same responsibility as a trustee serving after election. The report was filed 36 days after Rameker's initial appointment under 11 U.S.C. § 701(a) as interim trustee, but only 10 days after the trustee election was effective. 11 U.S.C. § 701(c) provides that "[a]n interim trustee serving under this section is a trustee in a case under this title." Thus it would appear that when he undertook the optional duty of filing the report, Rameker had been in the position of trustee for longer than 15 days. The report was therefore untimely.

Several courts have considered the effect of a trustee's report filed after the 15-day period has run. Courts have generally found that a report filed late by the trustee must still be responded to within 15 days by any creditor or debtor wishing to object to the report. See In Re Oliver, 4 B.C.D. 49 (S.D.Ca.1978), In Re Santoro, 3 B.R. 210 (E.D.N.Y.1980), and In Re Tanke, 4 B.R. 339, 6 B.C.D. 406, 2 C.B.C.2d 240 (D.Colo. 1980). However, the 5th Circuit Court of Appeals has in a well-reasoned decision held that the 15-day period begins to run when the objecting party receives actual notice of the trustee's report. In In Re Levens, 563

F.2d 1223 (5th Cir. 1977), the court reasoned:

> Creditors are entitled to notice before their property rights are cut off, and economy dictates that they withhold their objections until they are sure the trustee disagrees. Rule 403(b) provides constructive notice to them by requiring the trustee to file his report within 15 days of qualification. Once that period passes, however, the constructive notice either evaporates or the creditors must shoulder the onerous burden, not intended by the rules, of checking court records daily for an indefinite period of time.
>
> The trustee's delay upset the equipoise of rights and duties envisioned by the rules, and equity requires that the balance be restored here by not starting the 15 day time limit on creditors until they received actual notice of the filing. *See In re Perl*, 47 F.2d 923 (W.D.Pa.1930) (actual notice required when trustee missed deadline under General Order No. 17); 1A Collier on Bankruptcy ¶ 6.22 n. 3 (1976). To hold otherwise would not only burden creditors with an open-ended duty to check court records, but it would also encourage trustees to nurture hopes of dilatory ambush. 563 F.2d at 1224.

The *Levens* court held further that putting a letter in a mailbox does not provide actual notice. Actual notice occurs only upon receipt of the letter.

Although *In Re Levens* involved creditors' objections to the trustee's report, the arguments seem equally compelling when the objector is the debtor. Certainly where it is arguable that the debtor had no reason to anticipate the procedure employed gratuitously by the trustee there is a significant difference from the pre-Bankruptcy Code debtor who was charged with a reasonable duty to inform himself of when the mandatory report was actually filed. The 15-day period for the Bessels to respond to the trustee's report should begin when they received actual notice of the report. The report was mailed to the Bessels on August 27, 1981. The earliest they could have received the report is August 28, 1981. Thus, the 15-day period should begin to run on August 28, 1981.

■ In applying time periods in bankruptcy cases, Bankruptcy Rule 906(a) refers the court to F.R.C.P. 6(a). This rule provides:

> In computing any period of time prescribed or allowed by these rules, by the local rules of any district court, by order of court, or by any applicable statute, the day of the act, event, or default from which the designated period of time begins to run shall not be included. The last day of the period so computed shall be included, unless it is a Saturday, a Sunday, or a legal holiday, in which event the period runs until the end of the next day which is not a Saturday, a Sunday, or a legal holiday.

In computing 15 days from August 28, 1981, the last day falls on September 12, a Saturday. Therefore, the last day to file under F.R.C.P. 6(a) adopted by Bankruptcy Rule 906(a) is the next day which is not a Saturday, Sunday or legal holiday or Monday, September 14, 1981. As the Bessels' objections were filed on September 14, they were timely filed. The trustee's motion to quash should be denied.

■ The second issue to be considered is whether the debtors' amendments to their schedules should be quashed as not timely. Since the enactment of the new Bankruptcy Code, this question has troubled many courts. See *In Re Lowitz*, 3 B.R. 150 (W.D. Cal.1980), *In Re Maxwell*, 5 B.R. 58 (N.D. Ga.1980), *In Re Boyer*, 7 B.R. 930 (D.Idaho 1981), and *In Re Houck*, 9 B.R. 460 (E.D. Mich.1981). This court, in considering this question in *In Re Snow*, Adv.Pro. No. 80–0150, and *In Re Denker*, Bankruptcy No. MM7–80–00121, both decided December 31, 1981, has adopted a four-part test for determining whether an amendment should be allowed. Under this test, the court considers:

a. Whether an adverse party's rights will be prejudiced if an amendment is allowed. This question is important both because the equitable issue of fairness is involved, and because evidence of cynical mo-

tives in not originally claiming the disputed property as exempt might be revealed.

b. Whether not allowing the amendment will cause undue hardship to a debtor who has acted in good faith. This must be considered because not allowing an exemption could thwart a deserved fresh start.

c. Whether there is a reasonable excuse for not claiming the exemption on the original schedule.

d. Whether there is a reasonable excuse for any delay in seeking the amendment.

The first two considerations should carry the most weight.

■ Based on this test the Bessels' amendment should be allowed. (1) No adverse party's rights have been greatly, negatively affected. The trustee has expended nothing except the cost and effort in filing and briefing this motion. (2) If the amendment were not allowed, the Bessels would be unable to exempt their truck because on the original schedules the truck was claimed exempt by Mrs. Bessel who is not the legal owner of the truck. Further, the Bessels have listed another property, other than the "Sigal property," as a possible homestead exemption. Should the trustee prevail on his claim that the "Sigal property" is not homestead, the Bessels would have an alternate claim for the homestead exemption. That claim depends on the amendment. Thus the Bessels would be harmed if the amendment is not allowed. (3) The Bessels have offered no excuses for their failure to properly claim exemptions or for their delay in seeking amendments. It is probably another case of "perceived attorney ineptitude." [1] As in the *Snow* case, the first two elements of the test indicate a result favorable to the debtor, and that result should not be lightly overturned.

Upon the foregoing the trustee's motions to quash are denied and it is hereby,

ORDERED that a hearing on the objection to exemptions shall be held May 10, 1982, at 9:00 a. m., in the U. S. Bankruptcy Court, 44 East Mifflin, Suite 404, Madison, Wisconsin.

1. See *Snow, infra.*