In re Mary E. BARTLEY, Debtor.

Ronald LIPSHIE, Plaintiff,

v.

Mary E. BARTLEY, Defendant.

Bankruptcy No. 882–82775–18.
Adv. No. 883–0524–18.

United States Bankruptcy Court,
E.D. New York.

Oct. 19, 1983.

Ronald Lipshie, Baldwin, N.Y., for trustee.

Mirkin & Gordon, P.C., Great Neck, N.Y., for debtor.

## DECISION

C. ALBERT PARENTE, Bankruptcy Judge.

This is an adversary proceeding commenced by trustee, Ronald Lipshie, against debtor, seeking an order requiring debtor to turn over certain shares of publicly-traded stock on the grounds that such stock is not exempt property.

## BACKGROUND

On November 8, 1982, the debtor filed a petition under Chapter 7 of the Bankruptcy Code. At the December 16, 1982 first meeting of creditors, Ronald Lipshie was appointed as trustee of this bankruptcy estate. Prior to and at the December 16, 1982 first meeting of creditors, the trustee objected to the debtor's claimed exemption of shares of American Telephone and Telegraph Company stock valued at $550. Counsel for the debtor asserted that the corporate shares of stock were properly claimed as exempt property. On February 22, 1983, this court granted the debtor's discharge.

On June 21, 1983, the trustee commenced an adversary proceeding against the debtor, seeking a turnover of debtor's stock and revocation of her discharge. On July 19, 1983, the debtor served her answer with two affirmative defenses.

On August 4, 1983, the trustee and debtor's counsel appeared before this court for trial of the adversary proceeding. The trustee retracted his requested relief regarding revocation of the debtor's discharge, and both counsel stipulated to the aforementioned facts. Decision was reserved.

Three issues have been posited for resolution:

(I) Is the objection taken by the trustee to debtor's claimed exemption time-barred?

(II) Does Section 283(2) of the New York Debtor and Creditor Law permit a debtor in bankruptcy to exempt corporate stock under its contingent alternative bankruptcy exemption?

(III) Is Section 283(2) inconsistent with the bankruptcy exemption statute, 11 U.S.C. § 522, thus offending the Constitution as a violation of the supremacy clause?

## I. TIMELINESS OF TRUSTEE'S OBJECTION TO DEBTOR'S CLAIMS OF EXEMPTIONS.

Debtor asserts that the trustee did not file a written objection to debtor's claim of exempt property within fifteen (15) days after the first meeting of creditors which was closed on December 16, 1982. Debtor is, thus, apparently relying upon Rule 403 of the Bankruptcy Rules which went into effect on October 1, 1973.

Code Rule 403 required the trustee in Act cases to submit a report to the court, enumerating and evaluating a bankrupt's claimed exemptions, and required that such report be submitted no later than 15 days after the trustee qualifies.

■ Bankruptcy rules in effect at the time the Bankruptcy Reform Act of 1978 ("Code") was enacted apply to the extent not inconsistent with the Code unless supplanted by new rules. *In re Vigil,* 23 B.R. 172, 9 B.C.D. 812 (Bkrtcy.D.Colo.1982).

■ Code section 522(*1*), however, does not establish a time frame constraining the filing of objections to exempt property. This section merely requires the debtor to file a schedule of exempt property. In the absence of objection thereto the property is deemed exempt. The trustee has no obligation to file a trustee's report under the Code. Thus, Rule 403 and the time periods set forth therein are inconsistent with § 522(*1*) and reliance thereon is misplaced. *See In re Vigil, Id.; In re Bessel,* 18 B.R. 320, 8 B.C.D. 1155 (Bkrtcy.W.D.Wis.1982).

It should be noted parenthetically that effective August 1, 1983, subsequent to the dates of the transactions at issue herein, the filing of trustee's objections to claims of exemptions are governed by new Rule 4003(b) which sets a limit of thirty (30) days from the conclusion of the first meeting of creditors for the filing of trustee's and creditor's objections.

■ Notwithstanding the inapplicability of Rule 403, trustee's substantial delay in commencing the adversary proceeding should be evaluated to determine whether such delay prejudiced the debtor. *In re Vigil, Id.; see In re Cipa,* 11 B.R. 968, 7 B.C.D. 1026 (Bkrtcy.W.D.Penn.1981); *In re Sisemore,* 602 F.2d 742, 5 B.C.D. 847 (5th Cir.1979). However, debtor acknowledges that he was aware of the objection to his claim of exemptions at the first meeting. Thus, there is no basis to conclude that debtor was prejudiced by the later commencement of the adversary proceeding. Debtor cannot claim surprise nor can he assert that he changed positions in reliance upon the trustee's inaction.

## II. PERMISSIBILITY OF EXEMPTING CORPORATE STOCK UNDER SECTION 283 2. OF THE DEBTOR AND CREDITOR LAW.

Pursuant to 11 U.S.C. § 522(b), New York State has created an exemption scheme for the benefit of its domiciliaries who are debtors in bankruptcies and has, in addition, precluded such persons from electing the federal exemptions set forth in § 522(d). These exemptions are contained in the New York "opt-out" statute, Debtor and Creditor Law, article 10–A, sections 282–284.

Section 283 2. provides that a debtor in bankruptcy who does not avail himself of the homestead exemption of N.Y.C.P.L.R. § 5206, may exempt in addition to certain property listed in N.Y.C.P.L.R. § 5205 and in addition to certain "benefits, rights, privileges and options of annuity contracts," a sum of cash representing the lesser of the differential in value between $5,000 and the value of the § 5205 property and annuity contracts exempted or twenty-five hundred dollars. Section 283 2. defines cash as "currency of the United States at face value, the right to receive a refund of federal,

state and local income taxes, and deposit accounts in any state or federally chartered depository institution."

Debtor urges upon this court that the statutory use of the word "cash" is not to be strictly construed. This proposition is buttressed by the precept that it is the policy of New York courts to liberally construe exemption statutes. *Perry v. Zarcone,* 98 Misc.2d 899, 414 N.Y.S.2d 604 (S.Ct. Suffolk Co. 1979), *modified on other grounds* 77 A.D.2d 881, 431 N.Y.S.2d 50 (2d Dept.1980); *Scheer v. City,* 53 Misc.2d 80, 277 N.Y.S.2d 866 (S.Ct. Onondaga County 1967). Under debtor's analysis, § 283 2. provides a monetary ceiling upon a debtor's exemptions which may be utilized in any manner so long as the value of the property exempted does not exceed such limit.

■ Debtor's position is refuted by reference to several rules of statutory construction. When faced with a question of statutory construction, a court must first look to the language of the statute. *Caminetti v. United States,* 242 U.S. 470, 37 S.Ct. 192, 61 L.Ed. 442 (1917). A statutory determination declaring what a term "means" excludes any other meaning. *Colautti v. Franklin,* 439 U.S. 379, 99 S.Ct. 675, 58 L.Ed.2d 596 (1979); *C-Line, Inc. v. U.S.,* 376 F.Supp. 1043 (D.R.I.1974); *Motland v. U.S.,* 192 F.Supp. 358 (N.D.Iowa 1961). The fact that a statute is to be liberally construed does not authorize redrafting the unambiguous language of a statute; *see e.g., Chapiewsky v. G. Heileman Brewing Co.,* 297 F.Supp. 33 (W.D.Wis.1968).

■ Section 283 2. of the Debtor and Creditor Law specifically defines cash and fails to include corporate stock within such definition. Under the doctrine of *inclusio unius est exclusio alterius,* debtor's position is untenable.

Under the statutory framework of Article 10–A generally, specific types of property are enumerated as having exempt status. Nothing in the language of the article permits the conclusion that a debtor may exempt other non-enumerated property in

substitution for property protected under the statute.

## III. THE CONSTITUTIONALITY OF SECTION 283 OF THE DEBTOR AND CREDITOR LAW.

Debtor asserts that there exists a conflict between Section 283 of the Debtor and Creditor Law and the federal exemption schedule set forth in 11 U.S.C. § 522(d). The latter section, it is contended, enunciates a policy mandate that debtors be afforded adequate property to begin a fresh start.

■ Debtor relies upon the case of *In re Balgemann,* 16 B.R. 780, 5 C.B.C.2d 1361, 8 B.C.D. 827 (Bkrtcy.N.D.Ill.1982) in which the court determined that the Illinois opt-out provision is unconstitutional. In that case, debtor claimed that homeowners and non-homeowners received unequal exemptions and that such dissimilar treatment directly conflicts with Congressional policies as embodied in 11 U.S.C. § 522(d)(5). The court held that § 522(d)(5) which provides that a debtor may exempt his "aggregate interest, not to exceed in value $400 plus any unused amount of the [homestead] exemption provided under paragraph (1) of this subsection, in any property" constitutes a guideline governing states in their enactment of state exemption schemes. Thus, the court reasoned that § 522(d)(5) provides that homeowners and non-homeowners be offered exemptions equal in amount and that this guideline is binding upon the states in their creation of exemptions. To the extent that a state statute fails to adhere to this standard, such statute directly conflicts with the federal statute and is thus void under the supremacy clause of the Constitution. *In re Locarno,* 23 B.R. 622, 7 C.B.C.2d 553, 9 B.C.D. 813 (Bkrtcy.D.Maryland 1982), also held that discrimination in the exemptions offered to homeowners and non-homeowners conflicts with 11 U.S.C. § 522(d)(5) and is thus repugnant to the supremacy clause of the United States Constitution.

■ Any state legislation which frustrates the full implementation of federal law is rendered invalid by the supremacy

clause of the United States Constitution, U.S. Const. art. VI, cl. 2. The seminal case of *Perez v. Campbell,* 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971) enunciates a two-step test in determining whether a state statute constitutes an obstacle to the execution of Congressional objectives. The first level of analysis requires ascertaining the construction of both state and federal statutes. Second, a court must determine if there exists a conflict between such statutes.

Under the clear language of Debtor and Creditor Law § 283 2., types of property which constitute "cash" are specifically enumerated in unambiguous fashion. Such statutory definition precludes an inquiry attempting to divine any superseding legislative intent. *Motland v. U.S., supra.*

However, there exist competing arguments with respect to the proper construction of 11 U.S.C. § 522(d)(5) which debtor asserts acts to constrain the power of states to set the categories of exemptions available to its domiciliaries. Section 522(d)(5) has been referred to as the "grab bag" or "cafeteria" provision of the federal exemption statute on the basis that it enables a debtor to whom federal exemptions are available, to exempt any type of personal or real property up to the statutory limit set forth in § 522(d)(1). *See In re Locarno, supra.* The fundamental question remains: Does § 522(d)(5) set a standard which must be implemented in a state "opt-out" statute?

Section 522(b), which grants to states the power to establish their own schedule of exemptions and to preclude their domiciliaries from utilizing the federal exemptions set forth in § 522(d), provides in pertinent part:

Notwithstanding section 541 of this title, an individual debtor may exempt from property of the estate either—

(1) property that is specified under subsection (d) of this section, unless the State law that is applicable to the debtor under paragraph (2)(A) of this subsection specifically does not so authorize; or, in the alternative,

(2)(A) any property that is exempt under Federal law, other than subsection (d) of this section, or State or local law that is applicable on the date of the filing of the petition ...

The language of the statute enunciates no guidelines binding upon the states in their creation of exemption statutes.

The Court of Appeals for the Sixth Circuit held a state exemption statute constitutional notwithstanding that the state homestead exemption provided therein was smaller than the comparable federal exemption. *Rhodes v. Stewart,* 705 F.2d 159 (6th Cir.1983). The court in *Rhodes* held: "Section 522(b)(1) encompasses no facial restrictions upon the states' authority to opt-out." *Id.* at 163. The court supports its position by reference to the Fifth Circuit decision, *In re McManus,* 681 F.2d 353 (5th Cir.1982), holding the Louisiana "opt-out" statute constitutional:

Section 522(b) expressly grants the states broad discretion and an open-ended opportunity to determine what property may be exempt from the bankruptcy estate, as long as the state law does not conflict with property exempt under federal law other than the laundry list. Significantly, the section does not mandate that debtors be guaranteed a right to exempt particular types of property. The unambiguous language of section 522(b) implicitly indicates a state may exempt the same property included in the federal laundry list, or less property than that included in the federal laundry list. The states also may prescribe their own requirements for exemptions, which may either circumscribe or enlarge the list of exempt property. *Id.* at 355–56.

The case of *In re Sullivan,* 680 F.2d 1131, 6 C.B.C.2d 972, 9 B.C.D. 140 (7th Cir.1982), also upheld the constitutionality of a state exemption statute providing smaller aggregate exemptions than those available under federal law in the face of *inter alia* a supremacy clause challenge. The Seventh Circuit held that it would be inappropriate to apply

a preemption analysis to a situation in which Congress has *specifically directed* that a state can choose to declare section 522(d) inapplicable to its citizens. To apply a preemption analysis in this context is to ignore totally the explicit language of the section 522(b)(1) opt-out provision. *Id.*, 680 F.2d at 1136, 6 C.B.C.2d at 980.

Under the foregoing authorities and under the unambiguous language of § 522(b)(1), the states are free to develop their individual exemption schemes unencumbered by the standards enunciated in § 522(d). In light of this conclusion, there is no conflict between § 283 2. of the Debtor and Creditor Law and U.S.C. § 522(d)(5). Thus, this section of the New York "opt-out" statute is not antagonistic to the letter of or policies underlying the Code and does not offend the supremacy clause.

Accordingly, the trustee is entitled to an order requiring debtor to surrender certain publicly-traded stock debtor has claimed as exempt.

Settle Order in accordance herewith.