**In re Patrick and Lisa BUTCHER, Debtors.**

**Bankruptcy No. 93–5–2122–JS.**

United States Bankruptcy Court, D. Maryland.

Nov. 28, 1995.

Joel I. Sher, Shapiro & Olander, Baltimore, MD, for Debtors.

Michael J. Schwarz, Baltimore, MD, for Governor Plaza Associates.

Edmund A. Goldberg, Office of the U.S. Trustee, Baltimore, MD, for U.S. Trustee.

Susan Grüsser, Asst. Attorney General, Baltimore, MD, for State of Maryland.

Bradley H. Blower, U.S. Department of Justice, Civil Division, Washington, DC, for U.S.

*AMENDED MEMORANDUM OPINION OVERRULING OBJECTIONS TO CLAIM OF EXEMPTIONS*

JAMES F. SCHNEIDER, Bankruptcy Judge.

This matter came on for hearing before the U.S. Bankruptcy Court for the District of Maryland at Baltimore on April 12–13, 1995, upon objections to the debtors' exemption of monies payable on account of a settlement of personal injury claims. The objections were filed by a creditor, Governor Plaza Associates ("Governor Plaza"), and by the United States Trustee.

There are five bases for the objections: (1) that the Maryland personal injury exemption statute, Md.Cts. & Jud.Proc.Code Ann. § 11–504(b)(2), which contains no monetary limitation, violates the "reasonableness" requirement of the Maryland Constitution; (2) that the application of the state exemption statute to the facts of this case violates the "reasonableness" requirement of the Maryland Constitution; (3) that the state exemption statute violates the Supremacy Clause of the U.S. Constitution; (4) that the state exemption statute and Section 522(b) of the Bankruptcy Code violate the requirement of uniformity found in the Bankruptcy Clause of the U.S. Constitution; and (5) that Section 522(b) of the Bankruptcy Code violates the Due Process Clause of the Fifth Amendment of the United States Constitution.

For the reasons stated, the objections will be OVERRULED and the debtors' exemptions will be ALLOWED.

FINDINGS OF FACT

1. In August, 1980, some twelve and one-half years before Patrick and Lisa Butcher filed the instant voluntary Chapter 11 bankruptcy petition in this Court on March 25, 1993, Mr. Butcher was severely burned in an explosion of a hot water heater, for which he and Mrs. Butcher received a monetary settlement.

2. Among the debtors' elected exemptions was an exemption for "money payable from Traveler's [Indemnity Company] on account of [a] compromise of claims against Robertshaw Controls Company, pursuant to Settlement Agreement and Release of All Claims executed in January, 1983[,]" between the debtors and Liberty Mutual Insurance Company, ("the Settlement Agreement"). [Supplemental Amended Schedule C, P. 129] [1]

3. Under the Settlement Agreement, Travelers agreed to pay to the Butchers a lifetime, tax-free income on a monthly basis amounting to approximately $250,000 per year. The present value of the settlement agreement, based upon actuarial tables, is estimated to be $4,513,728.00. *Id.*

4. In the prayer for relief in their suit filed in the United States District Court for the District of Maryland by the Butchers against Robertshaw Controls Company, Rheem Manufacturing Company, and Arun-

del Gas and Water Conditioning Company, the Butchers sought $25 million in compensatory damages and $50 million in punitive damages in Counts I–V; and $1 million in compensatory damages and $2 million in punitive damages in Counts VI and VII. Plaintiffs' Exhibit No. 3.

5. The Settlement Agreement, [P. 176, Ex. B], did not allocate the proceeds of settlement between compensatory and punitive damages. The agreement simply stated that "[i]t is understood and agreed that this settlement is a compromise of a disputed claim, and that the payment made is not to be construed as an admission of liability on the part of ROBERTSHAW and that ROBERTSHAW denies liability and intends merely to avoid litigation." [P. 176, Ex. B, pp. 4–5] The Settlement Agreement was executed in January of 1983.

6. In 1985, the Butchers made investments in several health clubs located in Anne Arundel County, Maryland, that were owned and operated by one Bernard Caplan. In addition to making such investments, they also executed personal guaranties of the health clubs' obligations. Financial problems resulted in the closing of the health clubs.

7. The basis for Governor Plaza's claim in this case is a personal guaranty executed by the Butchers for a health club that was operated in the creditor's shopping center in Glen Burnie, Maryland. Governor Plaza filed suit against the Butchers on their guaranty and a judgment was entered against them on No-

---

1. On Supplemental Amended Schedule C, the debtors cited Md.Cts. & Jud.Proc.Code Ann. § 11–504(b)(5) as the statutory basis for their exemption of the settlement proceeds. [P. 129] Counsel for Governor Plaza noted an apparent typographical error in the citation of subsection (b)(5) instead of subsection (b)(2), the exemption provision directed toward personal injury claims, in its brief [P. 196] and at the hearing on its objection to the debtors' election of exemptions before this Court on April 12, 1995. In footnote 1 of the brief of Governor Plaza in support of its objection, Governor Plaza stated the following:

> The debtors' ... current exemption election is found in their Supplemental Amended Schedule C (court paper no. 129) dated May 16, 1994. They did not elect the Maryland Injury Exemption Statute, subsection (b)(2) of CJ 11–504. They did, apparently mistakenly, elect subsection (b)(5) of CJ 11–504, the Mary-

land "wild card" or "cafeteria" exemption statute. That exemption is limited to $3,000.00 in value of property. This brief is submitted on the assumption that the debtors will ... amend their exemptions ..., that they will elect subsection (b)(2), and that the court will allow [an] exemption amendment.

[P. 196, n. 1]. Counsel for the debtors orally moved that the Court recognize the statutory basis for the debtors' election as subsection (b)(2). The Court did not rule on that motion at the hearing. Counsel for the debtor also stated that he would file a line amending Schedule C to reflect the proper citation of subsection (b)(5) of the statute, [Transcript p. 13, lines 8–11], but has not done so at this time. The Court will excuse this oversight and treat decide this contested matter as if the correct subsection of the statute had been cited as the parties intended.

vember 11, 1992, in the amount of $421,-393.80, after the Butchers failed to defend the suit.

8. At the hearing before this Court, Mr. and Mrs. Butcher described the injuries to Mr. Butcher that formed the basis of the Settlement Agreement. On August 20, 1980, Mrs. Butcher was unable to draw hot water for her two-year-old son's bath. Mr. Butcher went into the basement of their home to attend to the problem, and as he was examining a propane hot water heater, a sudden explosion occurred. As a result, Mr. Butcher suffered second and third degree burns over 85 percent of his body. His face and torso ablaze, Mr. Butcher rushed from the basement and rolled on the ground to extinguish the flames. Alarmed by the loud explosion, Mrs. Butcher and their son ran outside and witnessed the terrible effect of the explosion on Mr. Butcher as he emerged from the basement, his person in flames. Mrs. Butcher testified that she was pregnant at the time of the accident.

Patrick Butcher spent nine weeks in the hospital under heavy sedation. During his hospitalization and subsequent convalescence, he endured numerous medical procedures for the treatment of his injuries. His burns required washing in a large tank to prevent infection. He underwent physical therapy to relearn basic skills, including how to walk and feed himself, because of his difficulty in flexing his fingers and joints. He could not walk independently for seven months after the accident. For eighteen months following the accident, he was required to wear a special suit for twenty-three to twenty-four hours each day, the purpose of which was to provide uniform pressure on the burned areas of his body. He testified that the suit, which covered him from head to toe, was painful.

Mrs. Butcher was the primary caregiver for her husband upon his release from the hospital. She testified that the accident produced severe emotional distress for her husband, herself, and their son. The complaint filed in the U.S. District Court alleged a loss of consortium.

As a result of the accident, Mr. Butcher was permanently scarred and disfigured. He has undergone plastic surgery on numerous occasions and will continue to require operations and treatment in the future. As an example, he testified at the hearing that he will require the removal of restrictive scar tissue that has built up around his left eye, preventing full closure of his eyelids and affecting his vision. Scar tissue prevents him from being able to fully open his mouth. He will continue to require reconstructive surgery. He has suffered arthritis and cannot tolerate hot or cold temperatures as a result of his burns. He continues to experience pain. Both debtors testified that Mr. Butcher has suffered psychological damage as a result of his disfiguring injuries. Mrs. Butcher testified that she continues to provide care as required after ongoing surgery.

9. In argument before this Court on April 12, 1995, counsel for Governor Plaza Associates acknowledged that "[t]here is no amount of money that will make them [Patrick and Lisa Butcher] whole."

10. The U.S. Department of Justice intervened, filed a brief, and argued in support of the constitutionality of 11 U.S.C. § 522(b). [P. 192] Likewise, the State of Maryland defended the constitutionality of Md.Cts. & Jud.Proc.Code Ann. § 11–504(b)(2) at oral argument and by the submission of a brief. [P. 191] The Office of the U.S. Trustee filed a supplemental brief in support of its objections to the debtors' election of exemptions and participated in oral argument. [P. 164]

*CONCLUSIONS OF LAW*

## CONSTITUTIONALITY OF THE EXEMPTION UNDER THE STATE CONSTITUTION:

■ 1. Section 11–504(b)(2) of the Maryland Courts and Judicial Proceedings Code is constitutional under the Maryland Constitution.

2. Maryland has "opted out" of the federal bankruptcy exemption scheme, as permitted by Section 522(b) of the Bankruptcy Code.[2] Md.Cts. & Jud.Proc.Code Ann. § 11–504(g) (1995).

---

2. The so-called "opt out" provision, Section

522(b) of the Bankruptcy Code, provides:

3. The Maryland exemption provision at issue is Md.Cts. & Jud.Proc.Code Ann. § 11–504(b)(2) (1995), which provides:

§ 11–504. Exemptions from execution.

(b) In general.—The following items are exempt from execution on a judgment:

(2) Money payable in the event of sickness, accident, injury, or death of any person, including compensation for loss of future earnings. This exemption includes but is not limited to money payable on account of judgments, arbitrations, compromises, insurance, benefits, compensation, and relief. Disability income benefits are not exempt if the judgment is for necessities contracted for after the disability is incurred.

*Id.*

4. The Constitution of the State of Maryland provides in pertinent part, as follows:

Section 44. Laws to be passed protecting property from execution.

Laws shall be passed by the General Assembly, to protect from execution a rea-sonable amount of property of the debtor. (1976, ch. 549, ratified Nov. 2, 1976.)

Md. Const. art. III, § 44.

5. The Maryland statutory provisions for certification of a question of state law to the Maryland Court of Appeals do not provide for certification by a United States Bankruptcy Court. Md.Cts. and Jud.Proc.Code Ann. § 12–601 (1989),[3] *In re Chapman,* 68 B.R. 745, 747 n. 3 (Bankr.D.Md.1986). Accordingly, this Court shall proceed to determine whether the Maryland statute in question is constitutional under the Maryland Constitution on its face and as applied.

6. In assessing the constitutionality of a statute, "every presumption favors the validity of a statute, it cannot be stricken down as void, unless it plainly contravenes a provision of the Constitution; a reasonable doubt in its favor is enough to sustain it." *Atkinson v. Sapperstein,* 191 Md. 301, 315, 60 A.2d 737 (1948) *quoting McGlaughlin v. Warfield,* 180 Md. 75, 78, 23 A.2d 12 (1941).

(b) Notwithstanding section 541 of this title, an individual debtor may exempt from property of the estate the property listed in either paragraph (1) or, in the alternative, paragraph (2) of this subsection. In joint cases filed under section 302 of this title and individual cases filed under section 301 or 303 of this title by or against debtors who are husband and wife, and whose estates are ordered to be jointly administered under Rule 1015(b) of the Bankruptcy Rules, one debtor may not elect to exempt property listed in paragraph (1) and the other debtor elect to exempt property listed in paragraph (2) of this subsection. If the parties cannot agree on the alternative to be elected, they shall be deemed to elect paragraph (1), where such election is permitted under the law of the jurisdiction where the case is filed. Such property is—

(1) property that is specified under subsection (d) of this section, unless the State law that is applicable to the debtor under paragraph (2)(A) of this subsection specifically does not so authorize; or, in the alternative,

(2)(A) any property that is exempt under Federal law, other than subsection (d) of this section, or State or local law that is applicable on the date of the filing of the petition at the place in which the debtor's domicile has been located for the 180 days immediately preceding the date of filing of the petition, or for a longer portion of such 180-day period than in any other place; and

(B) any interest in property in which the debtor had, immediately before the commencement of the case, an interest as a tenant by the entirety or joint tenant to the extent that such interest as a tenant by the entirety or joint tenant is exempt from process under applicable nonbankruptcy law.

11 U.S.C. § 522(b) (1993).

Maryland accepted the Congressional invitation to opt out of the federal exemption scheme through Md.Cts. & Jud.Proc.Code Ann. § 11–504(g) (1995), which provides:

(g) *Federal bankruptcy exemptions.*—In any bankruptcy proceeding, a debtor is not entitled to the federal exemptions provided by § 522(d) of the United States Bankruptcy Code.
*Id.*

**3.** § 12–601. Jurisdiction granted to Court of Appeals.

The Court of Appeals may answer questions of law certified to it by the Supreme Court of the United States, a Court of Appeals of the United States, a United States District Court, or the highest appellate court or the intermediate appellate court of any other state when requested by the certifying court a question of law of this State which may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent in the Court of Appeals of this State. (An.Code 1957, art. 26, § 161; 1973, 1st Sp.Sess., ch. 2, § 1.)
Md.Cts. & Jud.Proc.Code Ann. § 12–601 (1995).

7. In a constitutional analysis, "[d]ue consideration must be given to the purpose of granting the exemptions and the objectives to be fulfilled by the granting of them." *In re Taylor*, 312 Md. 58, 71, 537 A.2d 1179 (1988).

■ 8. The purpose of an exemption for monies payable in the event of personal injury is two-fold. One purpose is to prevent debtors and their families from becoming financially dependent upon the State. *American Service Corp. of South Carolina v. Hickle*, 435 S.E.2d 870, 871 (S.C.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 1298, 127 L.Ed.2d 651 (1994). However, in the case of the personal injury exemption, an even more fundamental purpose is served. The personal injury exemption is a legislative attempt to restore human capital; to preserve money that makes an injured debtor whole in the eyes of the law.

9. The U.S. District Court for the District of Maryland addressed the underlying purpose of the personal injury exemption in the case of *Niedermayer v. Adelman*, 90 B.R. 146 (D.Md.1988),[4] stating:

> A fundamental civility of our jurisprudence subordinates financial obligations to claims of life and liberty. Thus, without the citation of authority, our system does not permit incarceration to satisfy a debt. Nor does it permit the sale of human

beings as chattels. We would never require, for example, the extraction of a pint of blood from a person for sale in satisfaction of a money judgment.

> Likewise, an exemption law that permits a debtor to retain his claim to recompense himself for personal injury avoids a creditor's stripping him of his means of possibly becoming whole when injured in tort. The law will, within limits, allow for attachment of his property for the satisfaction of debts, and for that matter lawsuits that go with the property, but it will not allow for attachment of his person for such purpose. Under these principles we can expect that a car which is burned in an electrical fire will be subject to attachment, as would be any claim against the insurance company for the fire loss. On the other hand, a person is not a chattel subject to attachment in satisfaction of a debt, and so, too, a lawsuit seeking to recompense him for damage to his person is likewise protected from attachment.

*Id.* at 148. A Minnesota bankruptcy court, addressing the purpose of the Minnesota personal injury exemption statute, stated that "[u]nder our laws, honest debtors have never been required to pay their creditors with "a pound of flesh." *In re Bailey*, 84 B.R. 608, 610 (Bankr.D.Minn.1988) (citations omitted).[5] Subsequent to the *Bailey* decision, the Su-

---

**4.** In *Niedermayer v. Adelman*, 90 B.R. 146 (D.Md. 1988), the issue before the District Court was whether Md.Cts. & Jud.Proc.Code Ann. § 11–504(b)(2) applied to a civil claim pending in the Circuit Court for Baltimore City and whether the debtor's recovery of punitive damages could be exempted under the statute. In deciding the application of the statute to the facts, the court looked to its underlying purpose.

**5.** There are several cases from Minnesota that are instructive on this issue. As Maryland has done, Minnesota "opted out" of the federal bankruptcy exemption scheme, enacted an uncapped exemption for "[r]ights of action for injuries to the person of the debtor or of a relative whether or not resulting in death," Minn.Stat.Ann. § 550.37(22), and is subject to a state constitution which, like Maryland's, limits exemptions to a "reasonable amount of property." Minn. Const. art. 1, § 12. Several Minnesota courts have considered the Minnesota personal injury exemption statute in light of the state constitution. Because Minnesota cases were briefed by parties on both sides of this case and because of the importance of these cases to the instant deci-

sion, an examination of the Minnesota line of cases is appropriate.

The Minnesota Supreme Court has examined Minnesota's exemption statutes on the issue of the "reasonableness" requirement of the state constitution of Minnesota on certification of questions from the United States District Court in cases on appeal from three bankruptcy court decisions. In the case of *In re Tveten*, 402 N.W.2d 551 (Minn.1987), the court considered the exemption provisions for fraternal society benefits and found that the Minnesota Constitution required a value limitation on the amount of property that a debtor could exempt. The Court stated that the limitation need not be a specific dollar amount but that language such as "to the extent reasonably necessary for the support of the debtor" would be sufficient. *Id.* at 558. The Court held that the exemption provision for fraternal society benefits was unconstitutional because there was no value limitation on the amount that could be exempted. *Id.* The Court's next consideration of exemption provisions was in *In re Haggerty*, 448 N.W.2d 363 (Minn.1989). In *Haggerty*, the Court considered

preme Court of Minnesota stated that the purpose of the same exemption is "to make a person whole." *Medill v. State,* 477 N.W.2d 703, 708 (Minn.1991).

■ 10. Property in the nature of human capital is unlike any other property. The value accorded to an injury sustained to a person's body, either based upon an arm's length settlement, as in this case, or by judicial determination, is inherently reasonable where the injury is real and substantial. *Medill v. State,* 477 N.W.2d 703, 708 (Minn. 1991); *In re Bailey,* 84 B.R. 608, 611 (Bankr. D.Minn.1988).

■ 11. In addition to being inherently reasonable, the amount at issue for monetary

the Minnesota homestead exemption providing for the exemption of a certain number of acres of land. The Court reiterated the constitutional requirement of an objective limitation which did not necessarily have to be a dollar amount. *Id.* at 366. The Court held that the acreage limitation found in the homestead exemption provided such an objective limitation and that the statute was therefore constitutional under the Minnesota Constitution. *Id.* at 367.

After *Tveten,* but before the third case in the Minnesota Supreme Court trilogy, a bankruptcy court sitting in Minnesota considered the constitutionality of the Minnesota personal injury exemption statute. *In re Bailey,* 84 B.R. 608 (Bankr.D.Minn.1988). In *Bailey,* the bankruptcy court held that general damages, which represent monetary restoration of a physically and mentally damaged person, can never be unreasonable in amount. *Id.* at 611. Therefore, the court found the application of the personal injury exemption statute as to general damages to be constitutional. As to prepetition special damages which are comprised of actual medical costs, actual lost wages, nonmedical costs, and lost or damaged property, the court found that they do not represent a debtor's body and do not have the same character as general damages. Accordingly, application of the statute as to special damages was found to be unconstitutional under the analysis in *Tveten. Id.*

After *Bailey,* the Supreme Court of Minnesota considered the constitutionality of the Minnesota personal injury exemption statute upon certification from the U.S. District Court for the District of Minnesota, on appeal from the bankruptcy court decision in *In re Medill,* 119 B.R. 685 (Bankr.D.Minn.1990). In *Medill v. State,* the Supreme Court of Minnesota considered the constitutionality of the personal injury exemption as applied to general damages and future special damage awards for personal injury. *Medill v. State,* 477 N.W.2d 703 (Minn.1991). The Court found objective limiting criteria as required by the "reasonableness" provision in the Minnesota State Constitution, and as enumerated in *Tveten*

restoration of a damaged person is limited by objective criteria, namely the extent of the injury and the processes by which monetary restoration is obtained. *Medill v. State,* 477 N.W.2d 703, 707 (Minn.1991). In the case of a jury award, the amount of recovery is limited by the jury's finding of damages which must then be approved by the court. *Id.*[6] In the case of a settlement agreement, the amount is limited by the extent of the injury and by the parties' natural unwillingness to enter into a settlement that is unreasonable. *Id.*

■ 12. Analyses employed to determine the constitutional reasonableness of statutes

and *Haggerty,* in the limitations provided by the extent of the injury and by the judicial process of a jury's determination of the damages and court approval of the jury award. *Id.* at 707. The court stated that the personal injury exemption warrants a distinct analysis from those used in *Tveten* and *Haggerty,* and cited *Bailey* with approval. *Id.* at 708. In *dicta,* the court stated that the application of the statute to an out-of-court settlement would also be constitutional because the amount of the settlement is limited to the extent of the injury and by the parties' unwillingness to enter into an unreasonable settlement. *Id.* at 707.

Following *Medill v. State,* a bankruptcy court sitting in Minnesota had the opportunity to visit the issue of the constitutionality of the Minnesota personal injury exemption statute once more. *In re Cook,* 138 B.R. 943, 946 (Bankr.D.Minn.1992) (applying *Medill,* and holding that the statute may be constitutionally applied to general damages and postpetition special damages but not to prepetition special damages or punitive damages). In a subsequent case, a bankruptcy court sitting in Minnesota held that a structured settlement agreement arising out of a personal injury is a "right of action for injuries to a person" and accordingly embraced by the statute. *In re Dulas,* 177 B.R. 897 (Bankr.D.Minn.1995).

To summarize, the Supreme Court of the State of Minnesota has spoken on the constitutionality of an uncapped personal injury exemption statute in light of a state constitution that imposed the limitation of "reasonableness" on exemption statutes. The court found inherent, objective limitations on money that is payable on account of personal injury, namely, the extent of the injury, the judicial process, and, in the case of a settlement, the natural inclination of parties not to agree to something that is unreasonable. In subsequent cases, bankruptcy courts sitting in Minnesota have followed the *Medill* decision.

**6.** The *Medill* case involved a court-approved jury award.

that provide unlimited exemptions of such types of property as annuities are inappropriate when applied to statutes exempting money payable on account of personal injury. Personal injury exemption statutes require a distinct analysis. *Niedermayer v. Adelman,* 90 B.R. 146, 149 (D.Md.1988) ("personal injury claims, as opposed to property claims, form the basis of distinction"); *Medill v. State,* 477 N.W.2d 703, 708 (Minn.1991) ("The personal injury right of action appears to warrant a distinct analysis."). Accordingly, the cases cited by Governor Plaza that address exemption statutes for property other than the type at issue here are inapplicable.[7]

■ 13. The Court rejects the argument of Governor Plaza that the personal injury exemption should be limited to "subsistence." The only limitation on Md.Cts. and Jud.Proc. Code Ann. § 11–504(b)(2) is the constitutional limitation of "reasonableness" found in Article III of the Maryland Constitution, and this Court will not arbitrarily impose a limitation that is found neither in the statute nor in the Constitution. Moreover, the Maryland General Assembly explicitly rejected language limiting the personal injury exemption to amounts "reasonably necessary for the support of the debtor and any dependent of the debtor." H.B. 1029, 1981 General Assembly, Ch. 765, 1981 Md.Laws 2840.

■ The Court notes that counsel for Governor Plaza acknowledged in his brief that "[e]xemptions provide a bankrupt debtor with that property that is necessary to maintain human dignity . . ." [Governor Plaza Brief, p. 9]. At the most basic level, preservation of monetary restoration for bodily loss accomplishes the maintenance of human dignity.

■ 14. The Court also rejects the argument that an uncapped Maryland exemption statute is *per se* unreasonable. Such a rule would not take into account the purpose and nature of each particular exemption statute as required by the law of this state. *In re Taylor,* 312 Md. 58, 71, 537 A.2d 1179 (1988). In *Taylor,* the Court of Appeals of Maryland interpreted and applied the uncapped tools of the trade exemption in light of the Maryland Constitution.[8] No constitutional infirmity was raised or found. The personal injury exemption statute is not the only recognition by the Maryland legislature that a debtor's body is sacrosanct and unreachable by creditors. The exemption for "professionally prescribed health aids for the debtor or any dependent of the debtor," Md. Cts. & Jud.Proc.Code Ann. § 11–504(b)(3)(1995), is also uncapped except for the limitation of "reasonableness" found in the Maryland Constitution. These uncapped statutes represent the conscious recognition by the legislature that the value of things required to preserve or restore life and health is inherently reasonable.

## CONSTITUTIONALITY OF THE STATUTE AS APPLIED TO THIS CASE

■ 15. The Maryland personal injury exemption statute also passes muster under the Maryland Constitution as applied to the facts of this case. Having considered the

---

7. The following cases were cited by Governor Plaza that addressed exemption statutes for property other than money payable in the event of personal injury: *In re Foster,* 168 B.R. 183 (Bankr.D.Ind.1994) (exemption of insurance); *In the Matter of Zumbrun,* 626 N.E.2d 452 (Ind. 1993) (exemption of retirement account); *In re Netz,* 91 B.R. 503 (Bankr.D.Minn.1988) (exemption of stock bonuses, pensions, profit-sharing plans, and annuities) (decided prior to *Medill v. State,* 477 N.W.2d 703 (Minn.1991), which held that uncapped statute exempting rights of action for personal injuries did not violate "reasonableness" requirement of the Minnesota Constitution.); *In re Hudspeth,* 92 B.R. 827 (Bankr. W.D.Ark.1988) (cash value of insurance policies).

8. The *Taylor* court stated that tools of the trade must be "reasonably necessary" to qualify for

exemption. *In re Taylor,* 312 Md. 58, 72, 537 A.2d 1179 (1988). The limitation "necessary" was derived from the subsection dealing solely with tools of the trade; the limitation is not found in the subsection regarding personal injury, and as stated in Conclusion of Law 13, *supra,* the Maryland General Assembly rejected such a limitation.

*Taylor* was also decided after *In re Chapman,* 68 B.R. 745 (Bankr.D.Md.1986). *Chapman,* applying the tools of the trade exemption, held as a matter of Maryland law that it was unreasonable under the State Constitution to exempt tens of thousands of dollars worth of property. *Id.* at 747. On the basis of *Taylor, Chapman* may no longer be cited for such a proposition.

testimony of the debtors regarding the extent of the grievous psychological harm and bodily loss sustained by them, the Court is satisfied that the amount payable under the Settlement Agreement is reasonable in its attempt, albeit an incomplete one, to make Mr. and Mrs. Butcher whole in the eyes of the law. The reasonableness of the amount is bolstered by the admission of Governor Plaza's counsel that no amount of money will make the Butchers whole. The unwillingness of parties to enter into unreasonable settlements and the extent of the harm suffered by the Butchers provide objective limitations on this agreement. *See Medill v. State,* 477 N.W.2d 703, 707 (Minn.1991). The injuries sustained justify exemption of the amount payable under the Settlement Agreement, if not more. Governor Plaza has not complained that the settlement was unreasonable, nor has it offered evidence that the settlement was anything other than an arm's length transaction between the debtors, Liberty Mutual Insurance Company, and the Travelers Indemnity Company.

 16. This Court also rejects Governor Plaza's argument that the Settlement Agreement encompassed punitive damages. The Settlement Agreement was unstructured. Governor Plaza cited no authority to authorize such an allocation. Punitive damages are designed to punish wrongdoers and to deter others from engaging in similar misconduct. *Niedermayer v. Adelman,* 90 B.R. 146, 147 (D.Md.1988), *citing Embrey v. Holly,* 293 Md. 128, 442 A.2d 966 (1982). The instant agreement included the statement that "[i]t is understood and agreed that this settlement is a compromise of a disputed claim, and that the payment made is not to be construed as an admission of liability on the part of ROBERTSHAW and that ROBERTSHAW denies liability and intends merely to avoid litigation." [P. 176, Ex. B, pp. 4–5]. The denial of liability in the Settlement Agreement is inconsistent with the notion that the parties intended the settlement to incorporate punitive damages.

## SUPREMACY CLAUSE

 17. Governor Plaza attacked Md. Cts. & Jud.Proc.Code Ann. § 11–504(b)(2) as violative of the Supremacy Clause of the Constitution of the United States. The constitutionality of a state statute under the Supremacy Clause is determined by the two-part analysis set forth in *Perez v. Campbell,* 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971). First, both the state and federal statutes must be construed. Then, the Court must determine the constitutional question of whether the state and federal statutes are in conflict, *id.* at 644, 91 S.Ct. at 1708, that is, "whether a challenged state statute 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Id.* at 649, 91 S.Ct. at 1711, *quoting Hines v. Davidowitz,* 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581, 587 (1941).

18. It has been held that it is not necessary to entertain the above analysis in order to determine the constitutionality of a state exemption statute under the Supremacy clause where the state has "opted out" of the exemptions found Section 522(d) of the Bankruptcy Code. *In re Sullivan,* 680 F.2d 1131, 1137 (7th Cir.1982), *cert. denied,* 459 U.S. 992, 103 S.Ct. 349, 74 L.Ed.2d 388 (1982). According to *Sullivan,* the so-called "opt out" clause, Section 522(b) of the Bankruptcy Code, expressly restricted the preemptive effect of Section 522(d) by constitutionally delegating power to the states to legislate their own bankruptcy laws in the very narrow area of allowable exemptions. *Id.* "To say that state exemption provisions providing less solace to debtors than the federal exemptions of section 522(d) are in 'conflict' with either the language of the Code or expressions of Congressional intent underlying it is simply inaccurate. If Congress has the power to permit states to set their own exemption levels, the Illinois provisions are constitutional." *Id.*

19. However, this Court is not writing on a clean slate and must consider prior decisions of this Court and of the Fourth Circuit U.S. Court of Appeals. In the case of *In re Davis,* 16 B.R. 62 (Bankr.D.Md.1981), the court considered the constitutionality of a Maryland exemption statute that contained the precondition of negotiations with creditors. That statute was held to violate the Supremacy Clause because when a debtor

comes under the protection of the bankruptcy court, all of the debtor's property becomes property of the estate, and the debtor is no longer able to freely negotiate repayment. *Id.* at 64. *Davis* has been cited for the proposition that the congressional delegation of power may not be unbridled, but must necessarily be restricted. *Id.* at 64, *see In re Locarno,* 23 B.R. 622 (Bankr.D.Md.1982). However, *Davis* expressly declined to rule on the constitutionality of the "opt-out" provision, *Davis,* 16 B.R. at 63, so the statements made in that decision regarding the constitutionality of Congress' delegation of power were *dicta,* not binding authority upon this Court.

In *Cheeseman v. Nachman,* 656 F.2d 60 (4th Cir.1981), the Fourth Circuit U.S. Court of Appeals construed a Virginia exemption statute in harmony with Section 522(m) of the Bankruptcy Code, a subsection about which Congress did not delegate any legislative authority to the states. Notably, the Court's reasoning incorporated the conclusion that Congress delegated authority to the states to set exemption *levels. Cheeseman,* 656 F.2d at 64.

Finally, this Court must consider *In re Locarno,* 23 B.R. 622 (Bankr.D.Md.1982). *Locarno* held that a Maryland exemption statute which discriminated against non-homeowners conflicted with the "fresh start" policy of the Bankruptcy Code and was therefore unconstitutional. *Id.* at 630. In so doing, *Locarno* employed the analysis under the Supremacy Clause promulgated by *Perez, supra,* and rejected the proposition found in *Sullivan* that where Congress has expressed authority to be preempted, the matter ends. *Locarno* cited *Davis, supra* and *In re Balgemann,* 16 B.R. 780 (Bankr.N.D.Ill. 1982)[9], for the propositions that the states do not have unbridled authority to legislate exemption statutes and that the exemption scheme found in the Bankruptcy Code is to be used as a framework by the states. *Id.*

Accordingly, this Court will perform the analysis set forth in *Perez* to determine the constitutionality of the statute under the Supremacy Clause.

20. The legislative history of the federal exemptions found in Section 522(d) of the Bankruptcy Code was examined in *Locarno. Id.* at 629. The federal exemptions in the Bankruptcy Code were enacted to ensure that a debtor coming out of the bankruptcy process retains sufficient possessions to obtain a fresh start. *Id.* Congress has indicated that the property required for a fresh start includes human capital and property in the form of health aids necessary to preserve such human capital. *See* 11 U.S.C. § 522(d)(11)(D) (1993)[10] (exemption for "a payment, not to exceed $7,500, on account of personal bodily injury, not including pain and suffering or compensation for actual pecuniary loss, of the debtor or an individual of whom the debtor is a dependent"); 11 U.S.C. § 522(d)(11)(A) (1993) (exemption for "an award under a crime victim's reparation law"); 11 U.S.C. § 522(d)(9) (1993), (exemption for "[p]rofessionally prescribed health aids for the debtor or a dependent of the debtor"). The legislative history reveals that the provision "in subparagraph (D)(11) is designed to cover payments in compensation for actual bodily injury, such as the loss of a limb, and is not intended to include the attendant costs that accompany such a loss, such as medical payments, pain and suffering, or loss of earnings. Those items are handled separately by the bill." H.R.Rep. No. 595, 95th Cong., 1st Sess. 361–62 (1977) U.S.Code Cong. & Admin.News 1978 at pp. 5787, 6316–17.

21. The legislative history of Md.Cts. and Jud.Proc.Code Ann. § 11–504(b)(2) is virtually nonexistent. Accordingly, the Court's analysis will turn to judicial interpretations of the statute. Exemptions in Maryland are liberally construed, *In re*

---

9. *Balgemann* is of limited utility because Illinois is in the Seventh Circuit, the circuit governed by *In re Sullivan,* 680 F.2d 1131 (7th Cir.1982). To the extent that *Locarno* relied on *In re Rhodes,* 14 B.R. 629 (Bankr.M.D.Tenn.1981), it should be remembered that that decision was reversed in *Rhodes v. Stewart,* 705 F.2d 159 (6th Cir.1983),

*cert. denied,* 464 U.S. 983, 104 S.Ct. 427, 78 L.Ed.2d 361 (1983).

10. The relevant Bankruptcy Code provisions applicable to this case are those in effect at the time that the case was filed, before the Bankruptcy Reform Act was enacted in 1994.

*Taylor,* 312 Md. 58, 71 n. 5, 537 A.2d 1179 (1988). While no Maryland state court has construed the personal injury exemption, the U.S. District Court for the District of Maryland examined its underlying purpose in the case of *Niedermayer v. Adelman,* 90 B.R. 146 (D.Md.1988). There, Judge Niemeyer stated that the statute is a legislative recognition that the human body may not be used to satisfy a money judgment. *Id.* at 148. Similarly, money payable for personal injury, representing legal restoration of the human body, is protected from attachment as "[t]he most personal exemption other than health aids." *Id.* at 149.

■ 22. Embarking upon the second part of the analysis under the Supremacy Clause, that of determining whether the state and federal statutes are in actual conflict, this Court finds no conflict. Both statutes contain provisions exempting money payable in the event of personal injury, and both statutes were enacted for the purpose of preserving debtors' human capital. That the state statute provides a more generous exemption is of no moment. *England v. Golden (In re Golden),* 789 F.2d 698, 700 (9th Cir.1986); *McManus v. Avco Financial Services of Louisiana, Inc. (In re McManus),* 681 F.2d 353, 355 (5th Cir.1982); *In re Sullivan,* 680 F.2d 1131, 1137 (7th Cir.1982); *Cheeseman v. Nachman,* 656 F.2d 60, 64 (4th Cir.1981).

■ 23. Even under *Locarno's* restrictive view of the states' authority to legislate exemption statutes, the instant exemption provision is acceptable. Unlike in *Locarno,* the instant statute does not set up a classification scheme that differs from that established in Section 522(d). It merely sets a different level or amount of exemption allowed. States utilizing the "opt-out" provision have the authority to set exemption levels that differ from those provided under Section 522(d) of the Bankruptcy Code. *Cheeseman v. Nachman,* 656 F.2d 60, 64 (4th Cir.1981).

## UNIFORMITY REQUIREMENT OF THE BANKRUPTCY CLAUSE OF THE UNITED STATES CONSTITUTION

■ 24. Governor Plaza's assertion that the word "exempt" should be defined differently according to its location within Section 522(b) represents a strained reading of the Code and does not comport with the Supreme Court's admonition that the Bankruptcy Code is to be interpreted according to its "plain meaning." *United States v. Ron Pair Enterprises,* 489 U.S. 235, 242, 109 S.Ct. 1026, 1031, 103 L.Ed.2d 290, 299 (1989).

25. The U.S. Constitution granted Congress the authority to establish "uniform Laws on the subject of Bankruptcies." U.S. Const. art. I, § 8, cl. 4. Governor Plaza argues that the following statutes violate the uniformity requirement of the Bankruptcy Clause of the U.S. Constitution: 11 U.S.C. § 522(b), which permits states to "opt out" of the exemption scheme; Md.Cts. and Jud. Proc.Code Ann. § 11-504(b)(2), Maryland's personal injury exemption statute; and Md. Cts. and Jud.Proc.Code Ann. § 11-504(g), which renders exemptions found in 11 U.S.C. § 522(d) unavailable to Maryland debtors.

26. The constitutionality of a similar provision found in the Bankruptcy Act of 1898 on the basis of uniformity was considered in *Hanover National Bank v. Moyses,* 186 U.S. 181, 22 S.Ct. 857, 46 L.Ed. 1113 (1902). Like Section 522(b), the Act of 1898 provided for recognition and availability of state exemption laws. Chief Justice Fuller, delivering the opinion of the Court, held that while bankruptcy laws must be uniform throughout the United States, "[t]hat uniformity is geographical and not personal." *Id.* at 188, 22 S.Ct. at 860. The opinion in *Moyses* further stated:

" 'The power to except from the operation of the law property liable to execution under the exemption laws of the several States, as they were actually enforced, was at one time questioned, upon the ground that it was a violation of the constitutional requirement of uniformity, but it has thus far been sustained, for the reason that it was made a rule of the law, to subject to the payment of debts under its operation only such property as could by judicial process be made available for the same purpose. This is not unjust, as every debt

is contracted with reference to the rights of the parties thereto under existing exemption laws, and no creditor can reasonably complain if he gets his full share of all that the law, for the time being, places at the disposal of creditors. One of the effects of a bankrupt law is that of a general execution issued in favor of all the creditors of the bankrupt, reaching all his property subject to levy, and applying it to the payment of all his debts according to their respective priorities. It is quite proper, therefore, to confine its operation to such property as other legal process could reach. A rule which operates to this effect throughout the United States is uniform within the meaning of that term, as used in the Constitution.' [quoting Chief Justice Waite in *In re Deckert,* 7 F.Cas. 334 (C.C.E.D.Va.1874) (No. 3728)].

We concur in this view, and hold that the system is, in the constitutional sense, uniform throughout the United States, when the trustee takes in each State whatever would have been available to creditors if the bankrupt law had not been passed. The general operation of law is uniform although it may result in certain particulars differently in different States.

Nor can we perceive in the recognition of the local law in the matter of exemptions, dower, priority of payments, and the like, any attempt by Congress to unlawfully delegate its legislative power. *In re Rahrer, Petitioner,* 140 U.S. 545, 560 [11 S.Ct. 865, 35 L.Ed. 572 (1891)]."

*Id.* at 189–90, 22 S.Ct. at 861. In *Railway Labor Executives' Ass'n v. Gibbons,* 455 U.S. 457, 102 S.Ct. 1169, 71 L.Ed.2d 335 (1982), the Court nullified a bankruptcy law on uniformity grounds because it only applied to one debtor. In so doing, the Court cited *Moyses* for the proposition that "Congress can give effect to the allowance of exemptions prescribed by state law without violating the uniformity requirement." *Id.* at 469, 102 S.Ct. at 1176.

■ 27. It is well-settled that Section 522(b) of the Bankruptcy Code passes muster under the geographical uniformity requirement specified in *Moyses. Rhodes v. Stewart,* 705 F.2d 159, 162 (6th Cir.1983) (Section 522(b)(1) "is an exercise of the legislative prerogative to establish a 'uniform law' and therefore falls within that scope of authority provided to Congress in the Bankruptcy Clause."); *In re Sullivan,* 680 F.2d 1131, 1135 (7th Cir.1982) ("We do not share the appellants' view that the Supreme Court might well decide *Moyses* differently if that case were argued today."); *Kosto v. Lausch (In re Lausch),* 16 B.R. 162 (M.D.Fla.1981); *In re Snape,* 172 B.R. 361, 363 (Bankr. M.D.Fla.1994). "Absolute uniformity" of exemptions available to debtors in bankruptcy is not required. *Curry v. Assocs. Fin. Servs. (In re Curry),* 5 B.R. 282 (Bankr.N.D.Ohio 1980), *aff'd,* 11 B.R. 716 (N.D.Ohio 1981), *rev'd and vacated on other grounds,* 698 F.2d 298 (6th Cir.1983); *In re Lennen,* 71 B.R. 80 (Bankr.N.D.Cal.1987).

■ 28. The Court finds meritless Governor Plaza's argument that *Moyses* is inapplicable to the present case because of differences between the designation of property of the estate under the Bankruptcy Code and the former Bankruptcy Act. A similar argument was advanced in the context of a uniformity challenge to the uncapped Florida homestead exemption in *In re Snape,* 172 B.R. 361 (Bankr.M.D.Fla.1994). In response to that argument, the *Snape* court stated that

Notwithstanding the distinction between the creation of the estate under the Code and Act, it is clear that both require a determination under *local* law of that property which would not be subject to administration by the trustee in bankruptcy. Based upon this similarity, it is appropriate to conclude that *Moyses* remains the controlling law on the constitutionality of the state determined exemptions.

*Id.* at 363. This Court concurs with the foregoing opinion expressed in *Snape.*

■ 29. Governor Plaza's argument that state exemption laws are inapplicable to debtors under the Bankruptcy Code because only a federal statute can operate to remove property from the bankruptcy estate also fails because it does not take into account the proper delegation of legislative authority in Section 522(b). *See In re Sullivan,* 680 F.2d 1131, 1137 (7th Cir.1982). State exemption

statutes are applicable to cases under the Bankruptcy Code to the extent authorized by Congress in Section 522(b), and to no greater or lesser extent than that.

## SECTION 522(b) DOES NOT VIOLATE THE DUE PROCESS CLAUSE OF THE FIFTH AMENDMENT OF THE UNITED STATES CONSTITUTION.

30. The Fifth Amendment to the Constitution of the United States provides:

No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation.

U.S. Const. amend. V.

31. Governor Plaza contends that Section 522(b) of the Bankruptcy Code is a substantive violation of the Due Process Clause of the Fifth Amendment of the U.S. Constitution on the bases that it is unreasonable and irrational and that it permits a voiding of a contract of a creditor without just compensation. Governor Plaza presented no authority to the Court in support of its contentions. For the reasons stated below, Governor Plaza's arguments based on Fifth Amendment due process grounds also fail.

32. Federal bankruptcy legislation is classic economic regulation legislation. *In re Gifford,* 688 F.2d 447, 453 (7th Cir.1982) (decided after *en banc* rehearing of *In re Gifford,* 669 F.2d 468 (7th Cir.1982)). Federal economic regulatory legislation enjoys a presumption of constitutionality, and "the burden is on one complaining of a due process violation to establish that the legislature has acted in an arbitrary and irrational way." *Usery v. Turner Elkhorn Mining Company,* 428 U.S. 1, 15, 96 S.Ct. 2882, 2892, 49 L.Ed.2d 752, 766 (1976). As a preliminary

matter, Governor Plaza's argument on Fifth Amendment due process grounds fails because it has failed to meet its required burden of proof to overcome the presumption of constitutionality.

33. The standard for measuring whether economic regulatory legislation meets the substantive due process requirement of the Fifth Amendment is the rational basis standard. *Usery v. Turner Elkhorn Mining Company,* 428 U.S. 1, 15, 96 S.Ct. 2882, 2892, 49 L.Ed.2d 752, 766 (1976); *In re Gifford,* 688 F.2d 447, 453 (7th Cir.1982) (examining Section 522(f) lien avoidance on substantive due process grounds). Thus, the Court must determine whether Section 522(b) is rationally related to Congress' legitimate purposes in enacting the bankruptcy laws.

34. One of the primary goals of the bankruptcy laws is to provide the rehabilitated debtor emerging from the bankruptcy process with a "fresh start." H.R.Rep. No. 595, 95th Cong., 1st Sess. 126 (1977); *reprinted in* 1978 U.S.C.C.A.N. 6087. Exemption provisions are promulgated as part of the means to attain that goal. *Id.* at 6087. As for the opt out provision of Section 522(b), the legislative history behind the 1978 Bankruptcy Code provides:

... [S]ome State exemption laws have not been revised in this century. Most are outmoded, designed for more rural times, and hopelessly inadequate to serve the needs of and provide a fresh start for modern urban debtors. The historical purpose of these exemption laws has been to protect a debtor from his creditors, to provide him with the basic necessities of life so that even if his creditors levy on all of his nonexempt property, the debtor will not be left destitute and a public charge. The purpose has not changed, but neither have the level of exemptions in many states. Thus, the purpose has largely been defeated.

Though exemption laws have been considered within the province of State law under the current Bankruptcy Act, [footnote omitted] H.R. 8200 adopts the position that there is a Federal interest in seeing that a debtor that goes through

bankruptcy comes out with adequate possessions to begin his fresh start. Recognizing, however, the circumstances do vary in different parts of the country, the bill permits the states to set exemption levels appropriate to the locale and allows debtors to choose between the State exemptions and the Federal exemptions provided in the bill. [footnote omitted] Thus, the bill continues to recognize the States' interest in regulating credit within the States, but enunciates a bankruptcy policy favoring a fresh start.

H.R.Rep. No. 595, 95th Cong., 1st Sess. 126 (1977), *reprinted in* 1978 U.S.C.C.A.N. 6087. Subsequently, Section 522(b), with the opt out provision, was enacted as a compromise between the House of Representatives and the Senate.

This Court finds that Section 522(b) is rationally related to the fresh start made available to debtors by the Bankruptcy Code. Section 522(b) was enacted in recognition of the impossibility of enacting federal legislation that could take into account the various circumstances and conditions that exist from state to state, and the "opt-out" provision is a rational means to address that difficulty.

■ 35. This Court is not persuaded that Section 522(b) of the Bankruptcy Code produces a "taking" in violation of the Fifth Amendment. To any extent that Section 522(b) exerts a taking by making an interest of a creditor in specific property unenforceable by allowing a debtor to exempt it, any benefit inures to the debtor, not the public or the government. *See In re Gifford,* 688 F.2d 447, 460 (7th Cir.1982) (finding that lien avoidance under Section 522(f) does not constitute a taking under the Fifth Amendment because no benefit inures to the government). The forementioned case, decided under Section 522(f), providing for the avoidance of certain liens in order to allow debtors to more fully benefit from their exemptions, is analogous to Section 522(b), which provides for the exemptions in the first place.

■ 36. The Maryland personal injury exemption statute was enacted in its present form on May 19, 1981, effective July 1, 1981. H.B. 1029, 1981 General Assembly, 1981 Md.

Laws 2839–41. The Maryland General Assembly accepted Congress' invitation to "opt out" of the federal exemption scheme in the same piece of legislation. *Id.* Therefore, the exemption statutes at issue are not being retroactively applied. At the time that the debtors and Governor Plaza entered into the agreement that produced the debtors' guarantee, Section 522(b) of the Bankruptcy Code, allowing states to "opt out" of the federal exemption scheme, and Md.Cts. and Jud.Proc.Code Ann. § 11–504(g) and (b)(2), (opting out of the federal exemption scheme and providing for an uncapped exemption for money payable in the event of injury or accident), had been duly enacted. Governor Plaza is held to have had knowledge of the law and to have had a reasonable expectation that it would not be able to enforce its guarantee against future proceeds of the debtors' settlement on account of their injuries.

> All parties to a contract are, of necessity, aware of the existence of, and subject to, the power of Congress to legislate on the subject of bankruptcies. They were and are chargeable with knowledge that their rights and remedies, in case the debtor becomes insolvent and is adjudicated a bankrupt, are affected by existing bankruptcy laws and all future lawful bankruptcy legislation which might be enacted.

*First Nat'l Bank of Chicago v. Prima Co. (In re Prima Co.),* 88 F.2d 785, 788 (7th Cir. 1937).

## CORRECTIVE AMENDMENT TO SCHEDULE C

■ 37. The motion to amend Schedule C to reflect the correct subsection of the Maryland exemption statute will be granted. All parties understood that the debtors intended to exempt the money payable on account of personal injuries pursuant to Md. Cts. and Jud.Proc.Code Ann. § 11–504(b)(2) by reason of the multiple briefs filed and hearings held before this Court. Governor Plaza, having based its argument on the basis of the (b)(2) election, did not complain that it was prejudiced by the debtors' typographical error. In addition, this Court finds that the debtors have acted in good faith. Bankruptcy Rule 1009(a) provides that

A voluntary petition, list, schedule, or statement may be amended by the debtor as a matter of course at any time before the case is closed. The debtor shall give notice of the amendment to the trustee and to any entity affected thereby. On motion of a party in interest, after notice and a hearing, the court may order any voluntary petition, list, schedule, or statement to be amended and the clerk shall give notice of the amendment to the entities designated by the court.

Fed.R.Bankr.P. 1009(a). This rule is a permissive one, with amendment disallowed in limited instances of bad faith by the debtor or where there is prejudice to creditors. *In re Yonikus*, 996 F.2d 866, 871–72 (7th Cir. 1993) (Fraudulent concealment of asset led to court's disallowance of amendment of exemption to include concealed asset as exemption); *Calder v. Job (In re Calder)*, 973 F.2d 862, 867 (10th Cir.1992); *Tignor v. Parkinson (In re Tignor)*, 729 F.2d 977, 978–79 (4th Cir. 1984) (Decided under predecessor rule, but recognizing that Bankruptcy Rule 1009 takes the same approach).

Based upon the foregoing memorandum opinion, the objections of Governor Plaza and the U.S. Trustee will be OVERRULED and the debtors' exemptions will be ALLOWED.

ORDER ACCORDINGLY.